THE MARYLAND FERTILIZING AND MANUFACTURING COMPANY *vs.* BERNHARD LORENTZ and others, trading as LORENTZ & RITTLER.

*Construction of a Contract for the Delivery of oil of vitriol in Monthly deliveries—Waiver of Breach of a condition Precedent, by the Subsequent dealings between the parties—Measure of Damages—Objectionable prayer.*

The plaintiffs contracted with the defendant to deliver to it 12,000 carboys of oil of vitriol of a specified quality and price, free of charge, in tanks at the defendant's factory. The deliveries to be 2000 carboys monthly, in daily deliveries as wanted, during the months of September, October, November and December, 1873, and January and February, 1874, settlements to be made monthly in the defendant's paper, at four months. HELD :

1st. That said contract must be construed by the standard of intention apparent on its face.

2nd. That the parties could not have considered it entire and indivisible either in quantity, or in the details of its performance.

The plaintiffs failed to make any delivery under the contract in the month of September, but with the consent of the defendant, made partial deliveries in October and November, which were settled for, and the defendant then stopped them from delivering any more in said last two months, and sent them a letter declining to receive any more. HELD :

That a prayer of the defendant founded on the breach of the covenant to deliver the September instalment, without submitting to the jury the question of a waiver of such breach by the subsequent dealings between the parties, was founded upon too narrow a view of the contract.

A condition precedent may be waived by the subsequent dealings between the parties to the contract.

Case where the Court declined to lay down any rule as to the measure of damages. on the ground that the appellant had, under a prayer granted at the instance of the appellees, the benefit of the same standard of damages as that which it proposed should be given by the Court below, and was not injured by the instruction given.

Case where a prayer specially excepted to was held objectionable, because it not only was not founded upon evidence, but was contrary to the testimony of the party offering the prayer; and also because it excluded the testimony of the opposite party, which, if true, rendered the position assumed by the prayer untenable.

APPEAL from the Superior Court of Baltimore City.

The appellees sued the appellant, a corporation, for the breach of a contract the nature of which is stated in the opinion of the Court. A failure having occurred in the execution of the contract on the part of the plaintiffs, the agent of the defendant wrote them the following letter :

Baltimore, Sept. 4th, 1873.

Mess. Lorentz & Rittler, Baltimore,

Gents :—We will have to insist upon your furnishing us with acid according to your contract with our President, Mr. Sangston, otherwise we will be compelled to procure it from some other source, and charge you with any additional expense that may be added by so doing. You will please commence delivery immediately.

Yours truly,

J. EDWIN MYERS,

Genl. Agt.

Subsequent deliveries of the acid to the defendant were made by the plaintiffs, and evidence at the trial was given

by the plaintiffs tending to show that such subsequent deliveries amounted to a waiver by the defendant of the partial breach of the contract by them, and evidence was offered by the defendant tending to show that such deliveries were accepted not under the contract, but as independent original transactions. Subsequent to such deliveries the president of the defendant wrote the plaintiffs the following letter:

MARYLAND FERTILIZING AND MANUFACTURING Co.
OFFICE No. 4 SOUTH HOLLIDAY STREET,
Baltimore, Dec. 4, 1873.

Mess. Lorentz & Rittler,

Gents:—It is proper that I should inform you that I should decline receiving any acid on the contract made with you some months since. Your failures to make the deliveries as contracted, partly, if not chiefly, arising from your making a subsequent contract, to which you gave precedence, involving us in a loss of several thousand dollars, have, in my judgment, relieved us from any responsibility legally or equitably to continue receiving from you.

Very truly, yours,
LAWRENCE SANGSTON.

The case is further stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the three following prayers:

1. If the jury believe from the evidence that the plaintiffs wrote to the defendant the letter dated May 27th, 1873, and the defendant in reply thereto, wrote to the plaintiffs the letter dated May 28th, 1873, which have been offered in evidence, and that the defendant received from the plaintiffs, as it wanted, under the contract contained in said letters, 244 carboys of oil of vitriol in October, and 676 thereof in November, 1873, and settled therefor, as shown by the receipts dated respectively, October 30, and November 30, 1873, and that the defendant stopped the

plaintiffs from delivering any more in said two last mentioned months, and did not order any more, or indicate to the plaintiffs that it wanted any more in either of said months, or in December, 1873, or in January or February, 1874, but sent to the plaintiffs the letter dated December 4th, 1873; and shall further believe that the plaintiffs were ready and willing, and offered to deliver to the defendant 2000 carboys per month, as wanted, at the rate of from 80 to 90 carboys per day of such oil of vitriol as is described in said letter of May 27th, during said months of October, November, December, January and February, but that the defendant refused to receive and pay for any more than that received as aforesaid, then the defendant is liable to the plaintiffs in this action for its refusal to receive and pay for 9080 additional carboys of said oil of vitriol during said last mentioned months.

2. If the jury find for the plaintiffs under the first prayer, and further find that when said letters of May 27th and 28th were written, the plaintiffs were, or were known by the defendant to be engaged in the business of manufacturing oil of vitriol, and that it was the expectation of the plaintiffs and defendant that the plaintiffs would, themselves, manufacture the oil of vitriol called for by said letters, and further believe that the oil of vitriol offered by them and declined by the defendant, as assumed in the first prayer, was of their own manufacture, then the measure of damages to which the plaintiffs are entitled for said 9080 carboys of oil of vitriol, is the difference between the cost to the plaintiffs of manufacturing the same, and the contract price of $1.40 per hundred pounds thereof, unless they believe that after they knew that the defendant did not intend to take any pay for said oil of vitriol, the plaintiffs could have sold the same at a price which would make their damages less than under the application of this rule; and if they so believe, the measure of damages is the difference between the contract price for said oil of

vitriol, and that for which it could have been sold, when the defendant refused to take and pay for the same.

3. That the letter from J. Edwin Myers, dated September 4th, 1873, and the ratification thereof by the president of the defendant, and the assent thereto by the plaintiffs; if the jury shall find such assent, made it the duty of the defendant to supply itself, as it wanted, and with so much as needed of the 1360 carboys of said oil of vitriol, which the plaintiffs failed to deliver in September, 1873, or to inform them of its inability so to do, and the defendant is entitled to a deduction for such damages as the jury may allow the plaintiffs under the preceding prayers, of only the difference, if any, between the contract price of $1.40 per hundred pounds, and the actual cost to the defendant of so much of said oil of vitriol, as it procured to make up what it needed of the 1360 carboys not delivered by the plaintiffs in September.

And the defendant offered the four following prayers:

1. That if the jury believe from the evidence in this cause, that the plaintiffs after demand had been made on them by the defendant, or its duly constituted agent, failed and refused to deliver during the month of September, 1873, to the defendant, the 2000 carboys of oil of vitriol according to the terms and at the times specified, as contained in the letter of the plaintiffs to the President of the defendant's company, (which is the contract upon which this suit has been instituted,) and which letter bears date 27th May, 1873, then the plaintiffs cannot recover in this action, and the verdict of the jury must be for the defendant, unless the jury shall find that the plaintiffs' failure so to deliver the 2000 carboys called for by the contract, was occasioned by the act of the defendant.

2. That if the jury find from the evidence of the defendant's witness, Sangston, that a conversation was had between him and one of the plaintiffs in the early part of the month of October, 1873, and that in said conversation

the said defendant's witness notified the plaintiffs, that he, the said Sangston, acting for and in behalf of the said defendant, annulled the contract sued on in this case, and settled with said plaintiffs for the carboys which had been delivered in the month of September, 1873, on the express condition and stipulation that the contract of May 27th was annulled, and that the plaintiffs received the note of defendant in settlement with this understanding, then these facts together with the subsequent conduct of the plaintiffs as testified to by the witnesses for the defendant, are evidence from which the jury may find that the contract sued on in this case was annulled and rescinded by mutual consent; and if they so believe, their verdict must be for the defendant.

3. That if the jury shall find from the evidence in this cause, that the plaintiffs, without any default on the part of the defendant, committed a breach of the contract in September, and that the business of the defendant was impaired thereby, and injured in consequence of the plaintiffs' failure to, if the jury shall find they did so fail, execute their contract with the defendant, then the jury may set-off as a bar to the plaintiffs' claim in this action, the damages that they may find the defendant suffered by reason of the plaintiffs' breach of their contract with the defendant, and may consider the fact of the absolute inability of the defendant to purchase or procure acid in the month of September, as an element of damages suffered by the defendant, and for which the jury may recoup and set-off.

4. That the measure of damages, if the jury shall find the plaintiffs are entitled to recover at all, is the difference between the contract price and the market price of the oil of vitriol during the months in which the plaintiffs allege the defendant refused to receive and accept the oil of vitriol under the contract of 27th May, 1873.

The plaintiffs excepted specially to the defendant's second prayer, because there was no evidence legally suffi-

cient to sustain the hypothesis on which the same was founded.

The plaintiffs objected to the third prayer of the defendant, because there was no evidence sufficient in law to go the jury tending to establish the hypothesis of facts assumed in the said prayer.

The Court granted the plaintiffs' prayers, and refused those of the defendant.

The defendant excepted. The jury rendered a verdict for the plaintiffs, and judgment was entered accordingly. The defendant appealed.

The cause was argued before STEWART, BOWIE, BRENT and ROBINSON, J.

*H. Clay Dallam* and *I. Nevett Steele*, for the appellant.

If there have been an entire executory contract and the plaintiffs have performed a part of it, and then wilfully refuse, without legal excuse, and against the defendant's consent, to perform the rest, they can recover nothing either in general or special *assumpsit.* 2 *Smith's Leading Cases,* 53 ; *Cutter vs. Powell,* 6 *T. Rep.,* 320 ; *Dermott vs. Jones,* 2 *Wall.,* 1 ; *Waddington vs. Oliver,* 5 *Bos. & Pul.,* 50, (2 *N. S.,* 61 ;) *Kingdom vs. Cox,* 5 *M. Gr. & S.,* 522, (57 *Eng. Com. Law Rep.;) McMillan vs. Vanderlip,* 12 *Johns. Rep.,* 165 ; *Champlin vs. Rowley,* 18 *Wend.,* 187 ; *McKnight vs. Dunlop,* 4 *Barb. (S. C.,)* 36-44 ; *Hoare vs. Rennie,* 5 *Hurl. & Nor.,* 19, 26; *Walker vs. Dixon,* 2 *Starkie,* 281; *Paige vs. Ott,* 5 *Denio,* 406-407 ; *Martin vs. Schoenberger,* 8 *W. & Serg.,* 367 ; *Ellis vs. Hamlin,* 3 *Taunt.,* 52 ; *Witherow vs. Witherow,* 16 *Ohio,* 238 ; *Jennings vs. Camp,* 13 *Johns.,* 94 ; *Clarke vs. Smith,* 14 *Johns.,* 326 ; *Jones vs. Marsh,* 22 *Vermont,* 144 ; *Shinn vs. Bodine,* 60 *Penn.,* 182-185 ; *Stark vs. Parker,* 2 *Pick.,* 267 ; *Langdell's Select Cases on Conts.,* 559-870-1.

With regard to the action of the Court in refusing the second prayer asked for by the appellant, the Court erred

therein, for the reason, that by refusing to grant it, evidence was excluded from the consideration of the jury, whose province alone it was to pass on it. The prayer raises the question of the rescission of the contract by consent of the parties, and whether there has been a rescission, is peculiarly a question for the jury. 2 *Parsons on Contracts*, 190 ; *Fitt vs. Cassanet*, 4 *M. & G.*, 898.

*R. R. Battee* and *John H. Thomas*, for the appellees.

The appellees' inability and failure, to manufacture and deliver all of the acid called for by the contract, during the month of September, did not debar them of the right to recover damages for the refusal of the appellant to accept and pay for the subsequent deliveries to be made under said contract, in the latter months of October, November, December, January and February. The stipulation which was not performed by the plaintiffs, was only part of the consideration for the defendant's promise. The breach of it could be compensated for in damages. The plaintiffs' non-performance of such stipulation was no bar to their right of recovering for the defendant's breach of the agreement on its part as to the other months. *Pordage vs. Cole*, 1 *Wms. Saunders*, 320 *b; * 1 *Saunders' Pleading and Evidence*, 205, *(margin;)* 2 *Chitty on Contracts*, 1092 *of* 11*th Ed.*, and 678 *of* 9*th Ed.; * 2 *Smith's Leading Cases*, top *page* 25, *marginal page* 10, *sec.* 3 ; 5 *Robinson's Practice*, 614–15 ; *Boone vs. Ayre*, 1 *H. Black.*, 272, *note a; * *Benjamin on Sales*, 421, *part* 1, *book* 4—*para.* 1, *Division* 3 *of First Edition*, *secs.* 593–880, *and seq. of last Edition; * *Davidson vs. Glynn*, 12 *East*, 588 ; *Carpenter vs. Creswell*, 4 *Bing.*, 409, 11 *and* 12 ; *Campbell vs. Jones*, 6 *Term R.*, 570 *and* 1 ; *Rose vs. Poulton*, 22 *E. C. L.*, 191 *and* 3 ; *Slavers vs. Curling, et al.*, 3 *Bing. N. S.*, 355, (32 *E. C. L.*, 159 ;) *Ritchie vs. Atkins*, 10 *East*, 308 ; *Goldsborough vs. Orr*, 8 *Wheaton*, 217 ; *Phila., Wilm. & Balt. R. R. vs. Howard*, 13 *Howard*, 338 *and* 339 ; *War-*

*field vs. Booth,* 33 *Md.,* 71 ; *Franklin vs. Miller,* 4 *Ad. & El.,* 599 ; *Dugan vs. Anderson,* 36 *Md.,* 567-68 ; *Simpson vs. Crippin,* 8. *Queen's Bench,* 14, *(L. R.;) Brown vs. Muller,* 7 *Ex.,* 319, *(L. R.;) Tyers vs. The Rosedale and Ferry Hill Iron Ca.,* 8 *Ex.,* *(L. R.,)* 301 ; *Jonassohn vs. Young,* 4 *Best. & Smith,* 296—116 *E. C. L.,* 295 ; *Roper vs. Johnson,* 8 *Com. Pleas.,* 167, *(L. R.)*

Whether stipulations are to be considered dependent or independent, conditions precedent or not, depends upon the actual intent of the parties, to be gathered from the whole contract, not upon a technical construction of particular words. *Watchman vs. Crook,* 5 *Gill & John.,* 239 ; *Benson vs. Hobb,* 4 *Harr. & John.,* 285-6 ; *Phila., Wil. & Balto. R. R. Co. vs. Howard,* 13 *Howard,* 338-9-40.

The law leans strongly against forfeitures, which prevent a party from being entitled to recover, merely because he has not performed all the stipulations of his contract. *Phil., Wilm. & Balto. R. R. vs. Howard,* 13 *Howard,* 340.

In case of separate promises, each contracting party has his remedy on the promise made in his favor, without performance on his part of the whole, remaining liable in a separate action for his own breaches. 2 *Chitty on Contracts,* (11*th Ed.,*) 1086 ; *Franklin vs. Miller,* 31 *E. C. L.,* 148 ; *Boon vs. Ayre,* 1 *H. Blacks.,* 273, *note a.*

Bowie, J., delivered the opinion of the Court.

The appellees, Lorentz and others, sued the appellant, The Maryland Fertilizing Company, on the 4th of April, 1874, to recover damages for the breach of a contract, entered into between the parties, by letters dated respectively the 27th and 28th May, 1873.

On the date first mentioned, the appellees addressed a letter to L. Sangston, Esq., President of the appellant's Company, offering to furnish 12,000 carboys of vitriol, * * * equal to 1,620,000 lbs., calculating the carboys at the

average rate of 135 lbs., at the price of $1.40 per 100 lbs., against their four months note without interest, delivered free of charge in tanks at the appellant's factory. The deliveries to be as follows : September 1873, October 1873, November 1873, December 1873, January 1874, February 1874.—Each month 2000 carboys in daily deliveries as wanted, but not more than 80—90 carboys per day.

This offer was accepted by a letter of the President of the appellant, on the 28th of May, reciting the contract, and concluding " I accept and ratify this contract, as above stated, and as stated in your letter."

The *narr.* contains two counts ; the first, setting out the contract substantially, alleging a partial performance of the stipulations on the part of the plaintiffs and settlement for the months of September, October, November, and further averring that the appellees were ready and willing, and offered to deliver the 2000 carboys of vitriol, in daily deliveries as wanted, the balance of 2000 carboys in each of the said months of October and November, and the 2000 carboys per month, in the said months of December and January, but the defendant refused to accept or pay for the same. The second count, setting out the contract according to its legal effect, alleged generally, that the plaintiffs were ready and willing, and offered the defendant to deliver the said oil of vitriol, in pursuance of said contract, but the defendant refused to accept or pay for the same.

To which the appellant pleaded three pleas.

1st. That it was not indebted as alleged.

2nd. That it had not promised as alleged.

3rd. That it had not broken the contract as alleged. On these pleas issues were joined.

By agreement of counsel, all errors in pleading on either side, were waived, and it was further agreed, that either party might offer evidence, and rely on any fact, to which either would be entitled, if specifically declared on, or

.pleaded. The parties having severally offered evidence to maintain the issues joined on their respective parts, the appellees offered three prayers and the appellant four, to the second and third of which, special exceptions were taken by the appellees, and the Court having granted the prayers of the appellees, and rejected those of the appellant, the latter appealed. The first prayer of the appellant presents the question, whether the contract declared on is entire or severable, and affirms it to be indivisible.

It declares that if the jury believe that the plaintiffs, after demand had been made on them by the defendant, failed and refused to deliver during the month of September, 1873, to the defendant, 2000 carboys of vitriol, according to the terms and at the times specified in the letter of the plaintiffs, to the President of the defendant's company, etc., the plaintiffs cannot recover in this action, unless the jury find that the failure of the plaintiffs to deliver the 2000 carboys, was occasioned by the act of the defendant.

This proposition of the appellant, is controverted, although not directly negatived by the appellees' first prayer, which avers that if the defendant received from the plaintiffs, as it wanted, under the contract, certain carboys of oil, in October and November, 1873, (less than the amount agreed to be delivered) and settled therefor, and the defendant stopped the plaintiffs from delivering any more in said two last months, and did not order any more, or indicate to the plaintiffs that it wanted any more in either of said months, or in December, January or February following, but sent to the defendant the letter of Dec. 4th, 1873, (declining to receive any more) and shall further believe the plaintiffs were ready, willing, and offered to deliver to the defendant 2000 carboys per month as wanted, etc., but the defendant refused to receive and pay for the same, then the defendant is liable in this action for 9080 additional carboys during the said last mentioned months. The theory of this prayer is, that notwithstanding the

plaintiffs' failure to deliver to the defendant the requisite number of carboys of oil, in September, the subsequent conduct of the defendant, in receiving and settling for small quantities under the contract, in the months of October and November, was a waiver *"pro tanto"* of the default of the plaintiffs; and the letter of the President of the defendant to the plaintiffs, of Dec. 4th, 1873, declining to receive any acid on the contract, was such a violation of its terms on the part of the defendant, as to future deliveries, as made them responsible for all the vitriol remaining to be delivered.

The appellant's first prayer is limited entirely to the effect of the non-delivery by the appellees of the stipulated amount of vitriol in the month of September, 1873, without regard to other subsequent dealings between them.

This involves the proposition, says the appellant, that if there has been an entire executory contract, and the plaintiff has performed a part of it, and then wilfully refuses, without legal excuse and against the defendant's consent, to perform the rest, he can recover nothing, either in general or special assumpsit; a doctrine well established in cases of dependent covenants, where the performance of the one is a condition precedent to the other. The appellees deny the application of the authorities cited by the appellant, to maintain this position, to the case at bar. They insist, their inability and failure to perform all the covenants on their part, in September, etc., does not debar them of the right to recover damages for the refusal of the appellant to accept and pay for the subsequent deliveries in the latter months; that the covenants were independent and divisible; the stipulation which was not performed by the appellees, was only part of the consideration of the contract, for the breach of which they could be compensated in damages.

A great array of authorities has been cited by the counsel, in support of their respective propositions. These

decisions are not, in fact, conflicting in principle; they represent different classes of contracts, which, although in their general features alike, are dissimilar in detail, and have been sub-divided by the text books, into dependent and independent contracts or covenants. *Cutter vs. Powell,* 2 *Smith's Leading Cases,* 22, is a type of the class of dependent covenants. *Pordage vs. Cole,* 1 *Saunds.,* 319, is an example of the independent. In the notes on the former, the annotators say, "Few questions are of so frequent occurrence, or of so much practical importance, and at the same time so difficult to solve, as those in which the dispute is, whether an action can be brought by one who has entered into a special contract, part of which remains unperformed. We find it laid down in the treatises that, in certain cases, the performance of, or readiness to perform, one side of the contract, is a condition precedent to the right to demand performance of the other side. And rules are given in the text-books for the purpose of enabling us to distinguish these cases from another class, in which no such condition exists, but the contractors are bound by mutual independent covenants or promises." * * * * " There is no difficulty in finding cases referrible to each of the above classes, but the real difficulty is to determine when a case occurs in practice, to which of them it is referrible." In *Cutter vs. Powell,* the action was on a written promise to pay a sailor thirty guineas, "provided he proceeded, *continued,* and did his duty as second mate in the ship from Jamaica to Liverpool." He died before the voyage was completed. All the Judges, KENYON, ASHHURST, GROSE and LAWRENCE, held it to be an entire contract; Lord KENYON dwelt upon the amount of compensation being so much larger than the usual compensation by the month, that it might be regarded as a kind of insurance.

The plaintiff stipulated to receive the larger sum if the whole duty were performed, and nothing unless the whole

of that duty were performed. The case turned on the particular verbiage of the contract, and the surrounding circumstances.

*Pordage vs. Cole*, 1 *Saunders*, 319, is the converse of *Cutter vs. Powell.* The cause of action was an agreement under seal to pay a certain sum of money for certain lands. Which was held to constitute independent covenants between the parties, "because it shall be intended that both parties have sealed the specialty. And if the plaintiff has not conveyed the land to the defendant, he has also an action of covenant against the plaintiff, upon the agreement contained in the deed, which amounts to a covenant on the part of the plaintiff, to convey the land; and so each party has a mutual remedy against the other."

In the comments on this and analogous cases by the learned editor, it is said, "it appears that the judges in these cases seem to have founded their construction of the independency or dependency of covenants or agreements, on artificial and subtle distinctions without regarding the meaning or intent of the parties." *Note* 4, 320 *b.* *Pordage vs. Cole*, 1 *Wms. Saunders.* After collating and commenting on a number of cases, in which performance is a condition precedent, or concurrent acts are to be done at the same time, and readiness to perform, is a condition precedent to the right of action ; and cases of independent covenants and promises ; the conclusion is reached, "that the question whether the acts stipulated for in a given contract, are conditions precedent or concurrent, or whether the performance, or readiness to perform, upon either side, be a condition precedent, etc., is to be solved, not by any technical rules, but by the intention of the parties."

In the case of *Watchman & Bratt vs. Crook*, 5 *Gill & John.*, 254, *et seq.*, this Court declared "that whatever may have been the principles contained in the more ancient decisions, upon the legal effect and operation of contracts of a similar description, the strong leaning of the Courts

in more modern times has been to disencumber themselves from the fetters of technical rules, and to give such a rational interpretation to the contract, as will carry the intention of the parties into full and complete operation."

Lord MANSFIELD, Mr. Justice GROSE, Lord Ch. J. WILLES, Mr. Justice LAWRENCE and Lord KENYON, are all quoted to sustain the position "that conditions are to be construed to be either precedent, or subsequent, according to the fair intention of the parties to be collected from the instrument, and that technical words should give way to that intention."

With a canon of construction sanctioned by such eminent authorities, and adopted by our own Court of final resort, it is unnecessary to attempt to reconcile the apparently conflicting decisions of other tribunals; our duty is, to construe the contract given in evidence, by the standard of intention apparent on its face.

The subject of the contract was an article of commerce to be manufactured, and to be delivered in certain specified quantities per month, not exceeding a certain maximum per day, at a future period.

The whole time required to execute the contract as stipulated, was six months. Each monthly instalment, was to be settled for monthly, by a note at four months. The oil delivered in September, would be secured by note due on the 1st of February, one month before the expiration of the time allowed for the completion of the contract.

The mode of payment being commercial paper at four months, negotiable by endorsement from hand to hand, every instalment except the last, assuming the contract to have been specifically performed, might have been virtually satisfied and paid for, before the vendee could know whether the whole quantity contracted for, would be delivered. The parties, under these circumstances, could not have considered the contract entire and indivisible either in quantity, or in the details of its performance.

The failure to deliver at all in September, might have been condoned by the defendant; and the partial deliveries in October and November, might have been pursuant to defendant's directions, as is implied in the first prayer of the appellees; if so, a prayer founded upon the breach of the covenant to deliver one, out of six instalments, without negativing the hypothesis of the appellees' prayer, was founded upon too narrow a view of the contract, and the evidence in the cause.

A condition precedent, may be waived by the subsequent dealings between the parties to the contract; thus in the late case of *Carter vs. Scargill*, 10 *Queen's Bench*, (*L. R.*) 564, which was an action by a vendor of the business of a printer and publisher against the vendee. It was agreed that in the event of the business realizing a clear profit of £7 per week, the defendant would pay certain sums in instalments; several instalments were paid; others were unpaid; in the action for the latter, the defendant pleaded the business had not been shown to yield £7 per week profit. It was admitted the plaintiff had performed all other stipulations on his part to be performed. It was held "that whatever might have been the question, if it had been raised whilst the agreement was executory, it is clear that the defendant having received a substantial portion of the consideration, cannot rely on the non-performance of that which might have been originally a condition precedent." * * * * "The conclusion is, that that which might have been a condition precedent, has ceased to be so by the defendant's subsequent conduct in accepting less than his bargain, if, in fact there was any substantial deficiency ; and the result is that the condition in question in the present state of things goes only to a portion of the consideration and that not a substantial portion," etc.

The appellees' second, and the appellant's fourth prayer present the several theories of the respective parties, as to the measure of damages.

The appellees' upon the hypothesis of the facts therein stated, affirms the measure of damages to be the difference between the cost. of manufacturing the oil, and the contract price $1.40 per 100 lbs. thereof; unless the jury believe that after the plaintiffs knew the defendant did not intend to take any part of said oil, the plaintiffs could have sold the same at a price which would make their damages less than under the application of that rule ; and if they so believe, the measure of damages, is the difference between the contract price for said oil of vitriol and that for which it could have been sold, when the defendant refused to take and pay for the same.

The appellant's proposition is, that the measure of damages, is the difference between the contract price, and the market price, during the months in which the appellees allege the appellant refused to receive the oil.

When the appellees' prayer is analysed, and the obscurity of its terms dispelled, it will be found to differ rather in words, than in sense, from the prayer of the appellant.

Its first postulate is, the measure of damages is the difference between the cost of manufacturing the oil and the contract price $1.40, etc., but if the plaintiffs after the defendant's refusal to receive, could in the opinion of the jury have sold the oil for a sum which would lessen that difference, then the measure of damages, would be the difference between the market value and the contract price.

The qualification, restores substantially, the standard of damages, (viz., the difference between the contract, and the market price,) set up by the appellant.

There could be no doubt from the evidence in the record, that the plaintiffs could have sold the oil, after its refusal by the defendant, for a sum which would very much lessen the difference between the cost of manufacture and the price stipulated for.

There is a great diversity of opinion amongst the Courts of the several States, and between those of England and

the United States, as to the proper standard of damages between vendor and vendee.

It varies according to the circumstances of the contract, the delivery or non-delivery of the articles, and other details which distinguish contracts of sale from each other.

No decision of this Court has been referred to by either party, establishing the measure of damages in a suit by the vendor or vendee like the present. We forbear therefore from laying down any general rule, but think the appellant has had under the prayer granted at the instance of the appellees, substantially, the benefit of the same standard of damages, as that which it proposed should be given by the Court, and was not injured by the instruction given.

The appellees' third prayer is based upon the theory, that the letter of Myers of the 4th September, 1873, taken in connection with the subsequent dealings between the appellees and the appellant, constituted a waiver of the failure on the part of the appellees, to deliver the oil in September, and was *pro tanto*, a modification of the contract; in which event, if the jury so found, they might deduct from the damages which they might allow the plaintiffs, the difference between the contract price of $1.40 per 100 lbs., and the actual cost to the defendant of so much oil, as it procured to make up the quantity not delivered by the plaintiffs in September.

The appellant's third prayer, claims by way of recoupment and set-off, as a bar to the plaintiffs' claim, the damages the jury may find the defendant suffered by reason of the plaintiffs' breach of their contract in September, and may consider the fact of the absolute inability of the defendant to procure the acid in the month of September as an element of damages. This prayer was objected to by the appellees below, by special exception, because there was no evidence to establish the hypothesis of the prayer.

The prayer assumes that an absolute inability to purchase in the month of September existed, and does not leave it to the jury to find it.

Upon examining the record it is found that the defendant purchased 1110 carboys in September, at $1.50 per hundred lbs.; so that the prayer was not only not founded on evidence, but contrary to the testimony of the appellant. It also entirely excluded the testimony of the appellees, on which their third prayer was founded, and which if true, rendered the appellant's position untenable.

The letter of Myers to the appellees was written on the 4th of September, 1873, before any material breach of the contract had actually occurred, the appellees having the whole month to deliver the 2000 carboys in daily deliveries as wanted, not exceeding 80 or 90 per day. The arrangements made upon the receipt of that letter, as predicated in the prayer of the appellees, were in anticipation of an apprehended temporary failure, on the part of the appellees, and qualified the preceding contract to that extent. Hence the instruction based upon its existence, if found by the jury, was entirely correct.

The appellant's second prayer submits that if the jury find certain conversation between Mr. Sangston and one of the plaintiffs in October 1873, and certain notification by Sangston, that he, acting for the company, annulled the contract and settled with the plaintiffs for the oil delivered in September, on the express condition that the contract was annulled, and the plaintiffs received the note of the defendant in settlement with this understanding, then these facts together with the subsequent conduct of the plaintiffs *as testified to by the witnesses of the defendant*, are evidence from which the jury may find the contract was annulled and rescinded by mutual consent, etc.

The evidence is segregated in this prayer, and conclusions are sought to be drawn from the defendant's testimony, excluding the subsequent transactions of the appellant

with the appellees, as proved by them and inconsistent therewith.

We have examined the evidence carefully and can find no evidence that the plaintiffs agreed that the contract should be annulled or rescinded by mutual consent. Finding no error in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 3rd March, 1876.)

Robinson, J., dissented.