SOLON L. WILEY *vs.* INHABITANTS OF ATHOL.

Worcester. September 30, October 1, 1889. — January 2, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Contract — Condition Precedent — Guaranty — Acceptance of Part Performance — Measure of Damages — Evidence — Res Gestæ.*

A water company in 1876 made a contract with a town to furnish it with "a full and ample supply of water" for fire service at a certain rental per hydrant for a term of years, guaranteeing "a sufficient supply of water to run eight hydrants at the same time, and throw full streams of water over the highest building in either village" in the town. In 1877 the town voted to accept the works for fire purposes, upon the report of a committee that a satisfactory trial of the hydrants as located by them had been had, and that, upon certain changes being made, it would have a very good fire service. The company proceeded to furnish a supply of water, increasing by various changes the efficiency of its works, and the town used it until 1887, paying full rentals, except as otherwise adjusted between them in one or two instances, until 1885, after which it refused to make further payments. At no time could the hydrants simultaneously throw eight streams of water over the highest building in either village, and whether a "full and ample supply" had been furnished was in dispute. *Held*, in an action by the company against the town to recover for the arrears of rentals, that, while the guaranty was in the nature of a continuing condition precedent, the performance of which was necessary to enable the plaintiff to recover, it must be treated as having become in effect an independent agreement, for the breach of which the town might recoup damages suffered by it in its corporate capacity, and the measure of which would be the difference between the value of the supply actually furnished and that called for by the contract, estimated with reference to the uses for which it was furnished.

At the trial there was evidence that the company, while furnishing water to the town, sought new sources of supply, but soon abandoned them, and the defendant contended that these acts were an admission by the company and by its then president, who was the nominal plaintiff, of the insufficiency of the supply, both as to quantity and quality, then being furnished to the town under the contract; whereupon the plaintiff offered in evidence the records of votes of the

company reciting that the object of its acts was only to improve the quality of the water. *Held*, that it could not be said that the records were not properly admitted to show the purpose for which the acts were done.

CONTRACT brought by the surviving partner of a firm composed of Robert Wiley and Solon L. Wiley, doing business under the name of the Athol Aqueduct Company, to recover the rental of certain hydrants furnished by the firm to the defendant town. Writ dated December 21, 1887. Trial in the Superior Court, before *Staples*, J., who allowed a bill of exceptions, in substance as follows.

On June 5, 1876, the Wileys, then copartners in business under the name of the Athol Aqueduct Company, and the defendant town, by its board of selectmen, executed an agreement in writing, which, after reciting that the firm was formed for the purpose of supplying the town with pure water for domestic and other purposes, and that the town was desirous of making a contract according to law for such a supply, contained, among other things, the following provisions:

"Now the said Robert Wiley and S. L. Wiley, copartners aforesaid under the name of said Athol Aqueduct Company, covenant and agree to and with the inhabitants of said town to furnish and supply pure water to its inhabitants for the purpose of extinguishing fires; and they covenant and agree to and with said inhabitants, that they will furnish suitable hydrants, not less than fifty in number, twelve of which are to be double and thirty-eight single, all of which are to be located in accordance with a plan . . . upon which the location of the several hydrants are designated, and the several points thereon designated are to be points at which said hydrants are to be located, unless some other places are mutually agreed upon between said company and the committee of said town intrusted with their said location.

"And the said aqueduct company covenant and agree to and with said inhabitants, that they will furnish said town at all times with a full and ample supply of water from said hydrants, and from each and all of them, for the purpose of extinguishing fires, and will furnish the same at the rate of fifty dollars ($50) per hydrant, for each and every year, for the term of twenty-five years, and said company guarantee a sufficient

supply of water to run eight hydrants at the same time, and throw full streams of water over the highest building in either village in said town, during said term. . . .

" And the said aqueduct company . . . are to be relieved and free from any expense in the care or repairs of said hydrants after the same are put in suitable working condition, and transferred to said town. . . . And all of the water pipes and the work connected therewith are to be laid and constructed in a good and workmanlike manner and the same kept by said company in good repair.

" And the said aqueduct company further covenants and agrees to and with the said inhabitants of said town, that they will sell and transfer, by suitable and sufficient deeds of conveyance, all their right, title, and interest in and to the said reservoir, constructed as herein expressed, all water pipes and all other property connected therewith and owned by said company, to the said inhabitants, at any time after the expiration of fifteen years from the date when the hydrants are transferred to said town, and within the term of said twenty-five years, provided the said town pay them therefor the value thereof, to be ascertained by three competent and disinterested men, one of whom shall be selected by said company and one by said inhabitants, and the two persons so selected shall select a third, the award of whom, or a majority of whom, shall be final as to value. . . .

" And the said inhabitants covenant and agree to and with said aqueduct company that they will take fifty hydrants as hereinbefore specified, and pay the sum of fifty dollars per hydrant for each and every year, for the purposes hereinbefore named, and will also pay the sum of fifty dollars per year for each extra hydrant furnished as aforesaid, said fifty dollars per hydrant to be payable in semiannual payments of twenty-five dollars per hydrant, said payments to continue during the term of twenty-five years, as agreed to by said aqueduct company."

A meeting of the defendant town was duly held on June 13, 1876, at which it was voted to sanction and ratify the above agreement. On July 7, 1877, another meeting was held, at which a report of a committee, chosen on March 6, 1876, to investigate the subject of a water supply for the town and to

act for it with reference to contracting for the same, was presented, which report, after referring to the above contract with the Wileys, recited that " the committee have located for use of the town fifty hydrants, twelve of which are double and thirty-eight single, nearly all of the same being located at points designated on a plan exhibited at the town meeting at above mentioned date, . . . also that they have recently witnessed a trial of said hydrants, with hose attached, nearly all of them proving satisfactory," that, upon a single change agreed to by the Wileys being made, " together with some other changes which the committee may deem desirable, they think the town will have a very good fire service" over certain territory described, and that " therefore your committee would recommend that the town by vote accept the said hydrants, under the terms of the before mentioned contract." It was thereupon voted " that the town accept the water works, so far as relates to their use by the town for fire purposes, in accordance with report of the water committee."

The Athol Water Company was incorporated by the St. of 1877, c. 121, and was duly organized in that year, being authorized to take and hold among other streams the waters of Wellington Brook and Cut-Throat Brook. The plaintiff was the president of this corporation, and owned a controlling interest in its capital stock. This corporation purchased all the property of the above firm, and succeeded to all the rights and obligations of the firm under the contract with the town. This action is brought in the name of the surviving partner of the firm, for the benefit of the corporation. It was agreed that it was correctly brought as to parties. There was evidence tending to show that various changes had taken place in the waterworks since they were accepted by the town, improving the efficiency of the works over and above what they originally were; and that the rental for the hydrants had been paid until January 1, 1885, at which time the town refused to make further payments, the semiannual payment made by it on January 1, 1884, being reduced to one thousand dollars.

The action was brought to recover for the semiannual instalments accruing after that date, but it was agreed at the trial that the instalment of July 1, 1885, had been adjusted, and the claim was to recover for the service from July 1, 1885, to July 1, 1887.

The plaintiff offered evidence tending to show that during the time alleged he furnished the defendant town at all times with a full and ample supply of pure water from the hydrants referred to in the contract, and from each and all of them, for the extinguishing fires, in accordance with the interpretation of the contract adopted by the court.

The defendant offered evidence tending to show that the supply of water so furnished was not, during some or all the time covered by the claim, full and ample in quantity, nor pure in quality, for the purpose aforesaid, and according to the construction of the contract adopted at the trial. There was also evidence tending to show that the hydrants could not, at any time during the period covered by the claim, comply with the provision as to throwing eight streams of water at the same time over the highest building in either village.

There was evidence that, in 1882 or 1883, the corporation laid about one and a half miles of main pipe towards Cut-Throat Brook, but afterwards abandoned the project and took up the pipe, and in 1884 — having obtained authority by the St. of 1884, c. 189, to take water from Silver Lake for an additional supply — erected a pumping station near the lake and connected it with its aqueduct, but afterwards abandoned it. The plaintiff offered in evidence, against the defendant's objection, the records of the stockholders' meetings, to show by the votes there passed that the object of laying the pipe towards Cut-Throat Brook and of taking the water of Silver Lake was to improve the quality, and not to increase the quantity, of water. The judge inquired of the defendant's counsel whether the defendant would contend that the acts of the corporation in laying the pipe, and obtaining such legislation, and taking water from Silver Lake, were evidence of an admission and a recognition by the corporation of the insufficiency of the supply as to quantity then being furnished to Athol, under the contract. The counsel replied, that reliance would be had on those acts as evidence that the plaintiff Wiley, the president, and the corporation recognized that the supply was deficient both in quality and quantity; and the judge thereupon admitted the votes in evidence to meet such argument, which recited in substance that the object of said acts was to improve the quality of the water; and the defendant excepted.

The judge refused to instruct the jury, as requested by the defendant, that, " In order to recover, the plaintiff must prove that the water he has furnished during the time covered by the suit has been at all times of a degree of purity suitable for domestic and other uses," but gave other instructions to the jury on that subject, and the defendant excepted.

The defendant also requested the judge to instruct the jury as follows : " In order to recover, the plaintiff must prove, as a condition precedent, that during all the said time he has furnished such a force and quantity of water at each and every hydrant, that, with the length of hose which it might ordinarily be necessary to use to extinguish fires, and with the size of nozzle ordinarily used with such systems, any eight of said hydrants would supply eight full streams of water at the same time, and throw such full streams of water with as much force as would be required to throw over the highest building in either village, unless the plaintiff was temporarily prevented from so doing by accident, and supplied the defect caused by such accident with reasonable promptitude and diligence."

The judge declined to give this instruction, but instructed the jury, in substance, that the contract contemplated a full and ample supply at all times from each and every hydrant, the water being used in a proper manner and with proper appliances, for the extinguishment of such fires as might reasonably be expected to occur in the town ; that the so called " guaranty " as to what any eight hydrants should be able to do, on a proper construction of the contract itself, and on the evidence as to the practical construction put upon it by the parties themselves, was an independent stipulation, the performance of which it was not necessary for the plaintiff to prove as a condition precedent to recovery ; that evidence as to what eight hydrants run together at the same time could or could not accomplish, was admitted only as bearing on the question of what was " a full and ample supply " under the contract ; and that, if it was shown that the contract in that particular had not been complied with, the defendant would have a right to recoup any damages suffered by it as a corporation, by such failure by the plaintiff to perform that stipulation ; but that damage to individual property by reason of such failure was not to be taken into account :

also that the town must avail itself of the breach of the so called guaranty, and of other independent stipulations in the contract to be performed by the plaintiff, in reduction of the damages.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*F. P. Goulding*, for the defendant.

*W. S. B. Hopkins & F. B. Smith*, for the plaintiff.

FIELD, J.   The counsel for the defendant, at the argument, waived the exception taken to the ruling of the court in respect to the quality and purity of the water required by the contract. The most important exception is to the refusal of the court to rule that the plaintiff, in order to recover, must prove, as a condition precedent, that during all the time covered by the declaration a sufficient supply of water had been furnished " to run eight hydrants at the same time, and throw full streams of water over the highest building in either village in said town," and to the instructions given upon this part of the case.

The presiding justice, apparently, was of opinion that the covenant to "furnish said town at all times with a full and ample supply of water from said hydrants, and from each and all of them, for the purpose of extinguishing fires," was the principal covenant, and that the guaranty of a sufficient supply " to run eight hydrants at the same time, and to throw full streams of water over the highest building in either village in said town," was an independent collateral stipulation, and that if the principal covenant or the guaranty had not been fully performed, this would not defeat the action, but the defendant could recoup any damages which it had suffered as a corporation by reason of the defective performance.   The ruling that the guaranty was an independent stipulation was made " on a proper construction of the contract itself, and on the evidence as to the practical construction put upon it by the parties themselves."

The evidence was that the contract was executed on June 5, 1876, the selectmen executing it in behalf of the town, and was ratified by the town at a town meeting held on June 13, 1876. Subsequently, at a town meeting held on July 7, 1877, the committee of the town on water supply made a report, and the town then voted to " accept the waterworks, so far as relates to their

use by the town for fire purposes, in accordance with report of water committee," etc. This report stated that "the committee have located for use of the town fifty hydrants, twelve of which are double and thirty-eight single; . . . that they have recently witnessed a trial of said hydrants, with hose attached, nearly all of them proving satisfactory," and think that, by making certain changes which had been agreed upon, and "some other changes which the committee may deem desirable, . . . the town will have a very good fire service" over that part of its territory which is described in the report. The committee recommend "that the town by vote accept the said hydrants, under the terms of the before mentioned contract." There was evidence that certain changes had taken place in the works since the vote of July 7, 1877, which to an extent greater or less improved "the efficiency of the works over and above what they originally were."

The Athol Water Company was incorporated under the St. of 1877, c. 121, and it had purchased all the property of the partnership called the Athol Aqueduct Company, and "succeeded to all the rights and obligations of said firm under said contract." This action was brought, for the benefit of the corporation, by the surviving partner of the firm of the Athol Aqueduct Company, and "it was agreed that it was correctly brought as to parties." The defendant apparently had enjoyed the use of the water down to the date of the writ, at least, which is December 21, 1887, and it had paid for the use of it down to January 1, 1885, a deduction from the agreed price having been made for the half-year ending January 1, 1884. The amount claimed to have become due on July 1, 1885, has been adjusted in some manner by the parties; and the action is prosecuted to recover for the use of the hydrants from July 1, 1885, to July 1, 1887.

The plaintiff offered evidence "that during the time alleged he furnished the defendant town at all times with a full and ample supply of pure water from the hydrants referred to in the contract, from each and all of them, for the extinguishing fires, and in accordance with the interpretation of the contract adopted by the court." The defendant offered evidence "that the supply of water so furnished was not, during some or all the

time covered by the claim, full and ample in quantity, nor pure in quality, for the purpose aforesaid, and according to the construction of the contract adopted at the trial." There was also evidence "that the hydrants could not, at any time during the period covered by the claim, comply with the provision as to throwing eight streams of water at the same time over the highest building in either village."

If the word "guaranty" in the contract was used in any technical sense, it must have been used for "warranty" or "warrant," because there is no contract of a third person which is guaranteed. If it be taken to mean the same as "warrant," then the agreement is to warrant that the specified quantity and head of water shall be furnished.

It is said that the English courts make a distinction between a warranty in a contract of sale of a specific chattel when the title passes unconditionally by the contract and the warranty is collateral to the sale, and a warranty in an executory contract of sale, when the title does not pass by the contract. In the latter case, it is said that, by the English law, the buyer may refuse to receive and accept the chattel if it does not conform to the warranty; but that in the former case he cannot, although he may recover or recoup his damages for breach of the warranty. By our law, the buyer can rescind a contract for breach of warranty if the title has passed, and can return the chattel, or refuse to accept it; and if the title has not passed by the contract, he can refuse to accept the chattel, if it does not conform to the contract. See *Bryant* v. *Isburgh*, 13 Gray, 607; *Morse* v. *Brackett*, 98 Mass. 205. In an executory contract to sell and deliver in the future certain things described in the contract, the things to be delivered must be such as they are described, and a warranty of kind, quantity, or quality in such a contract is only an agreement that the things delivered shall be of the specified kind, quantity, or quality; and if they are not, the buyer can refuse to accept them, because they are not what he has agreed to buy. This is not the rescission of an executed contract by the buyer, but the non-performance of an executory contract by the seller.

In the case at bar, the guaranty may be considered either as defining what should constitute "a full and ample supply of

water," or as fixing a minimum below which the supply should
not be permitted to fall; but upon either construction the plain-
tiff must furnish the amount guaranteed, in order to perform his
part of the contract.   It is true, that by the contract the aque-
duct company was to furnish hydrants and lay down water
pipes, and keep the pipes and works connected with them in
repair; but as these things were necessary in order to enable
the company to furnish the water, it cannot be held that the
defendant would be liable to pay anything for these if the water
was not furnished.   The furnishing of the water was the prin-
cipal thing, to which everything else was subordinate.   See
*Bacon* v. *Parker*, 137 Mass. 309.   We agree, therefore, with
the defendant's counsel in his contention that the guaranty was
in its nature a continuing condition precedent, the perform-
ance of which was necessary to enable the plaintiff to recover,
semiannually, the price agreed to be paid for the use of the
hydrants.

But although conditions precedent must be performed, and
a partial performance is not sufficient, yet when a contract has
been performed in a substantial part, and the other party has
voluntarily accepted and received the benefit of the part per-
formance, knowing that the contract was not being fully per-
formed, the latter may thereby be precluded from relying upon
the performance of the residue as a condition precedent to his
liability to pay for what he has received, and may be compelled
to rely upon his claim for damages in respect of the defective
performance.   *White* v. *Beeton*, 7 H. & N. 42.   *Behn* v. *Bur-
ness*, 3 B. & S. 751.   *Jonassohn* v. *Young*, 4 B. & S. 296.   *Pust*
v. *Dowie*, 5 B. & S. 20.   *Carter* v. *Scargill*, L. R. 10 Q. B. 564.
*Mill Dam Foundery* v. *Hovey*, 21 Pick. 417, 448.   *Norrington* v.
*Wright*, 115 U. S. 188.   *Heilbutt* v. *Hickson*, L. R. 7 C. P. 438.
See *Maryland Fertilizing Co.* v. *Lorentz*, 44 Md. 218; *Sampson*
v. *Somerset Iron Works Co.* 6 Gray, 120; *Kenworthy* v. *Ste-
vens*, 132 Mass. 123; Benjamin on Sale, (4th ed.) 547; Leake,
Con. 664.

The foundation of this rule undoubtedly is, that it would be
unfair that a party should receive and keep a part of what he
has bargained for, and pay nothing for it because he has not
received the whole.   The technical reason given is, that a

covenantee or promisee must be held to have dispensed with the performance of a condition precedent, as such, if, with knowledge that the condition was not being fully performed, he treats the contract as continuing, and takes the benefit of a part performance. There are difficulties in the application of the rule, particularly in determining what constitutes such a part performance as will change the condition precedent into an independent agreement. It seems that the performance must be of a substantial part of the contract, and that the acceptance must be under such circumstances as to show that the party accepting knew, or ought to have known, that the contract was not being fully performed.

There is a further difficulty suggested in the present case, namely, that the contract is of such a nature that there is no satisfactory measure of damages, if the full and ample supply of water guaranteed was not furnished. If a full and ample supply was furnished, which yet did not come up to the guaranty, the damages could not be large. If the supply was not full and ample, and not up to the guaranty, the town, unless it had precluded itself by an acceptance of the works, could at any time have given notice to the aqueduct company, and have refused thereafter to receive the water and to accept a part performance of the contract. If the supply, such as it was, was a substantial benefit to the town, and the town continued to receive and use it, knowing that it was less than the company had agreed to furnish, the town ought to pay something for what it has received.

There is a provision in the contract that after the expiration of fifteen years, and within the term of twenty-five years, the company will sell and transfer its right, title, and interest in the reservoir, and in the pipes and other property connected therewith, to the town, at a valuation to be determined by three competent and disinterested men. The works are property, and have been treated by the parties as property, the value of which can be estimated. We have no doubt that the value of the use of the hydrants by the town could be estimated by a jury, if the contract, instead of defining the price, had provided that a reasonable price should be paid. If the town has received a supply of water which was found to be useful for the purpose of extin-

guishing fires, but which was less than the supply which the company agreed to furnish, we have no doubt that it would be competent for a jury to determine the difference in value between the supply actually furnished and that agreed to be furnished. If the town had paid the company the stipulated price, and then had brought suit to recover damages because the supply of water had not been what the company had agreed to furnish, it cannot be said that it would be impossible to estimate the damages. This case, we think, cannot be taken out of the rule we have stated, on the ground that the damages for a breach of the contract could not be estimated, if the guaranty is regarded as an independent agreement.

Although the exceptions do not show that the company furnished, during all the time alleged, a full and ample supply of water for extinguishing fires, yet we think it appears that the supply was such as to be substantially useful for that purpose, and was received and used by the town with knowledge of the deficiency in the supply, if there was a deficiency, and without any intimation to the aqueduct company or to the water company that it refused to receive and accept the water in part performance of the contract. On the facts which appear, we think that the court was right in holding that the guaranty, during the time covered by the declaration, must be treated as having become in effect an independent agreement, for the breach of which damages might be recouped in the action.

The measure of damages was the difference between the value of the supply of water actually furnished, and of that which by the contract should have been furnished, estimated with reference to the uses for which it was furnished. Upon the question of these damages, the exceptions do not state that the defendant offered any evidence, except that the supply furnished was not full and ample, and was not equivalent to the amount guaranteed. The ruling that the damages suffered by individuals in their property, by reason of the failure to furnish the stipulated supply, could not be taken into account, was undoubtedly correct. The court also ruled that the town might " recoup any damages " it had suffered as a corporation by reason of the failure to furnish a full and ample supply, and also that it might " avail itself of the breach of the so called

guaranty, and of other independent stipulations in the contract to be performed by the plaintiff, in reduction of the damages." This ruling is correct, so far as it goes. If the defendant town desired a more specific statement of the nature of the damages which might be recouped, or of the evidence which would be competent to prove such damages, we think that it should have offered evidence, and requested suitable rulings.

It appeared in evidence that in 1882 or 1883 the Athol Water Company laid water pipes towards Cut-Throat Brook, and in 1884 procured the passage of the St. of 1884, c. 189, and afterwards erected a pumping station at Silver Lake, and " connected it with its aqueduct, but soon abandoned it." The defendant's counsel, in reply to an inquiry by the court, stated that he should contend that these acts were an admission by the corporation, and by the plaintiff Wiley, who was then its president, of the insufficiency of the supply as to quantity and quality then being furnished to the town under the contract. The plaintiff's counsel offered in evidence the records of the meeting of the stockholders of the corporation, " to show, by the votes there passed, that the object of laying the pipe towards Cut-Throat Brook, and of taking the water of Silver Lake, was to improve the quality, and not to increase the quantity, of water." The court admitted the record of the votes, " which recited, in substance, that the object of said acts was to improve the quality of the water."

The acts of the corporation were not the acts of its president, and we are not clear that evidence of these acts was competent for the purpose contended for by the defendant; but if it was, we cannot say that the records were not properly admitted to show the purpose for which the acts were done. The votes contained a declaration of the purpose of the corporation in ordering the acts done. The declaration of the purpose is a part of the doings of the corporation, by the authority of which the acts were done. It does not appear that at the time these votes were passed the present controversy had arisen. Apparently it is the common case of declarations accompanying acts which tend to explain or qualify the meaning of the acts, and which are considered as a part of the *res gestæ.*

*Exceptions overruled.*