# THE JOPLIN WATERWORKS COMPANY v. THE CITY OF JOPLIN, Appellant.

### Division Two, November 17, 1903.

1. **Evidence:** INTRODUCTION: APPELLATE PRACTICE. Where the record discloses an ordinance as a part thereof, the appellate court will conclude that such ordinance was introduced in evidence at the trial.

2. **Suit on Contract:** HYDRANT RENTALS: RECOVERY. In a suit by a waterworks company for hydrant rentals for water supplied to a city under an ordinance, where the defense is that the amount of water supplied was not equal to that called for by the contract, the amount of recovery, if the city has accepted and used the water actually supplied, should be the amount due according to the terms of the contract, less any damages sustained by the city by reason of the failure of the company to strictly comply with the terms of the contract. And the damages in such case should be estimated with reference to the uses for which the water was to be supplied. And if there has been a substantial compliance with the contract, that is, unless there was a substantial difference between the value of the water supplied and that agreed to be supplied, the damages should be nominal.

3. ———: ———: ———: ACCEPTANCE: DEFENSE. A city can not accept of the benefits of the water supplied to it by a waterworks company, and then when sued for a recovery of the amount agreed to be paid for the supply of water, urge that the amount supplied was insufficient, and for that reason there was a failure to comply with the contract and, hence, the company is not entitled to recover anything. If it wanted to escape payment altogether it should have terminated the contract, and refused to accept any water at all.

4. ———: ———: ———: ———: QUANTUM MERUIT: WAIVER. In such case, the failure of the city to enforce the provision of the contract intended to meet the default complained of, should be treated as a waiver of the right to insist that the contract was abandoned, and that the company is entitled to recover only a *quantum meruit*.

5. ———: ———: INSTRUCTION: INTEREST. In a suit on a contract for the recovery of hydrant rentals, which were to be paid semi-annually, interest being asked for on the amounts due at each

semi-annual period, the court told the jury, at plaintiff's request, that if they found for plaintiff they would ascertain what sums were due him under the contract, and compute interest thereon to the time of the trial, and embodied therein a calculation of the interest by using the sums mentioned in the contract as the principals, but also instructed them that such calculation was not binding on them, but that they must make the calculation for themselves. By an instruction for defendant the jury were told that the amounts the company was entitled to receive were the amounts called for by the contract, less any damages the city had sustained by reason of a failure to supply a less amount of water than that called for by the contract. *Held*, that this instruction was only an effort to point out to the jury the correct method of calculating the interest, and while not approved, the error is nevertheless harmless.

6. ————: ————: EVIDENCE: SUPPLY TO INDIVIDUALS. In a suit against a city for water rentals, due under a contract to supply the city with water for extinguishing fire, flushing the streets, etc., the defense being that the supply of water was less than that called for by the contract, the court should exclude any testimony tending to show that the supply to individuals was insufficient. The city could not, in such case, be recouped in damages sustained by individuals.

7. Evidence: ORDER OF INTRODUCTION: It is not error to permit a party to introduce a witness after the case has been closed.

8. Instructions: AFTER ARGUMENT. It is not error for the trial court to give an instruction after argument has been begun.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins*, Judge.

AFFIRMED.

*C. H. Montgomery* and *Joel T. Livingston* for appellant.

(1) Plaintiff introduced in evidence no ordinance contract described in plaintiff's petition. There was a complete failure of proof, and the finding should have been for defendant. (2) Plaintiff offered no evidence that it complied with its contract. It conceded by offering no evidence in rebuttal that it failed to comply with

it. It could recover only for the value of the water furnished and accepted by the city. The burden was on plaintiff to prove the value of the water furnished. It did not even offer to do this. Here there is a verdict without a scintilla of evidence to support it. (3) Plaintiff sues for water furnished for fire protection, for flushing gutters, and to supply with water the streets, lanes, alleys and public places and for hydrant rental. Defendant offered to show its relative value for its various uses. The court excluded this testimony, thereby depriving the jury of any rule by which the value of the various uses might be estimated. This was clearly error. Sykes v. City of St. Cloud, 22 N. W. 613; Wiley v. Inhabitants of Athol, 23 N. W. 311; Winfield Water Co. v. City of Winfield, 33 Pac. 714. (4) The court committed error in excluding testimony offered by defendant to show that the water company refused to let defendant have water for flushing the gutters, in rebuttal of the testimony of a witness for plaintiff that plaintiff furnished an uninterrupted supply of water for flushing gutters, etc. (5) The court erred in refusing to permit proof to show a failure on the part of plaintiff to furnish water for domestic purposes conceded by counsel for plaintiff to be required by the contract upon which plaintiff has based its suit. Water and Light Co. v. City of Lamar, 140 Mo. 157. (6) The court erred in excluding testimony to show the relative value and efficiency of water pressure that would throw six streams simultaneously on Main street one hundred feet high and a pressure that would only throw them forty or fifty feet high. (7) The court erred in stating in the presence of the jury that all the balance of defendant's theory of defense was wrong. There was nothing in the circumstances to warrant any such remark. State ex rel. v. Rubber Mfg. Co., 149 Mo. 196; McPeak v. Railroad, 128 Mo. 617. (8) The court erred in permitting plaintiff to put on a witness and prove a material fact in chief after both parties had

rested their case, and the witnesses for defendant had been discharged. (9) The court erred in submitting a written statement of plaintiff's entire claim to the jury with the computation of all the interest to the time of trial, thereby intimating very clearly to the jury that if the court was trying the case, it would find for plaintiff's whole claim and interest. Padgitt v. Moll and Railroad, 159 Mo. 154; Wells v. Zallee, 59 Mo. 509. (10) After the opening argument of plaintiff's attorney, and after the argument of one of the attorneys for defendant, the court of its own motion gave an instruction to the jury calculated to make them believe that defendant had only proved nominal damages and calculated to greatly prejudice defendant's defense in the eyes of the jury. This instruction was so confessedly erroneous that it was withdrawn during the argument; but no instruction was given the jury to disregard it or that they should not consider it. Barr v. City of Kansas, 105 Mo. 559; Raysdon v. Trumbo, 52 Mo. 38; Anderson v. Kinchelo, 30 Mo. 524; Padgitt v. Moll and Railroad, supra; Frice v. Public Schools, 39 Mo. 67; Haney v. City of Kansas, 94 Mo. 334. (11) Plaintiff failed to show any substantial compliance with the contract and can not recover at all. Winfield Water Co. v. City of Winfield, 33 Pac. 714. (12) Plaintiff's suit is on the contract. It concedes it has not complied with the contract upon which its suit is predicated. There is no count for the value of water furnished. Without such a count there is a total failure of proof and the finding should have been for defendant. A plaintiff can not sue on an express contract and recover upon a *quantum meruit*. Eyerman v. Cemetery Co., 61 Mo. 489; Davis v. Brown, 67 Mo. 313; Lewis v. Slack, 27 Mo. App. 119; Chapman v. Curie, 51 Mo. App. 40; Goodman v. Crowley, 161 Mo. 657.

*L. P. Cunningham* and *Thomas Dolan* for respondent.

(1) It was not on the plaintiff to prove the value of the water furnished by the plaintiff and used by the city. It was, however, upon the plaintiff to prove a substantial compliance with the contract expressed in the ordinance, and this plaintiff did, as set forth in our statement of case. A substantial compliance was all that was required. (2) As to the defendant's showing actual damages, the most it could claim under the evidence to recoup would be nominal damages, yet as seen by the instructions and the introduction of evidence, the trial court was far more liberal than this, and tried the case and it went to the jury upon the theory that defendant was entitled to claim, recoup and offset substantial damages, and the jury did allow defendant $1,223.17. This savored of the substantial. 1 Sutherland on Damages (3 Ed.), sec. 75. Damages must be certain. Ibid, secs. 53-55. (3) Opposing counsel says the trial court erred in refusing to permit defendant to show the fire pressure was insufficient, etc., and refers to the evidence. We think the objection is not tenable and that a bare reading of the evidence shows that the court was far too liberal in allowing the introduction of testimony. (4) Any failure of the water company to supply a citizen with water within the city limits is something for which he has an action. The city is not liable for damages, and the right of action is not in the city, and it was not a proper subject of proof in this case, and the trial court ruled correctly. It is expressly decided the city is not liable for failure to supply water for fire pressure. Heller v. Mayor, etc., 53 Mo. 161; Dill. Mun. Corp. (4 Ed.), secs. 774, 957, 976; Frederick v. Columbus, 51 N. E. 35. (5) As shown by the instructions the parties tried the case upon but one theory, that is, did the plaintiff substantially perform the contract as required by ordinance

or did it not? and defendant can not adopt a new or different theory here. Horgan v. Bady, 155 Mo. 670; Schmitz v. Railroad, 119 Mo. 256; Bank v. Hammerslough, 72 Mo. 274; Clifton v. Sparks, 82 Mo. 115. Appellant is bound by the theory presented by the instructions given at its instance. O'Rourke v. Railroad, 142 Mo. 343. (6) The order and time for the introduction of testimony is very largely in the discretion of the trial court, and will not be interfered with unless evident injury has resulted to the party complaining. Fullerton v. Fordyce, 144 Mo. 526; State v. Warten, 139 Mo. 526; State v. Soper, 148 Mo. 217; State v. Laycock, 141 Mo. 274. (7) The courts not only allow jurors to take out with them the pleadings, but also statements of claim, accounts, diagrams, bills of particulars, or a computation made by the plaintiff's attorney, or a statement of account, although containing some items of which there was no proof. Thompson on Trials, sec. 2581; Budd v. Hoffheimer, 52 Mo. 304. And this court has gone further and decided that where an expert is introduced who is familiar with a set of account books, and that the examination of the books in court would be onerous, prolonged, inconvenient or unsatisfactory, he may state the result shown by them. Railroad v. Johnson, 7 S. W. 838; Ins. Co. v. Weide, 9 Wall. 677; Price v. Ins. Co., 48 Mo. App. 295; Kennedy v. Holloday, 25 Mo. App. 504. (8) It has been expressly held that the court may and should instruct properly if it instructs at all, and to this end may change, withdraw or give new instructions, at any time before verdict. The pleadings and instructions are taken to the jury room, and it is requisite that the instructions be right when taken by the jury to consider and make up a verdict. Yore v. Coal and Transfer Co., 147 Mo. 687. It is no objection that the argument has begun or even closed, and the jury may be called in after retiring to their room to consider their verdict. State v. Ferguson, 152 Mo. 92;

Willmolt v. Railroad, 106 Mo. 536; Buck v. Railroad, 108 Mo. 191; Glenn v. Hurt, 120 Mo. 343; Wilkinson v. Dock Co., 102 Mo. 130. (9) The doctrine of waiver defeats defendant, if there was nothing else. Plaintiff, during all the time sued for, furnished water to defendant for the various purposes required by its contract with defendant, and defendant accepted and used the water so furnished by plaintiff during all this time, and having done so, defendant can not now claim that there was a failure of sufficient water pressure at a certain time, and that therefore the defendant can not recover, for the reason that the defendant has waived that defense to this action. Water Co. v. Lamar, 140 Mo. 157.

### STATEMENT.

FOX, J.—This cause is brought here by appeal from a judgment of the Jasper Circuit Court. That we may fully understand the nature of this controversy and the issues presented, we here insert the pleadings. They are voluminous, but it is difficult to intelligently pass upon the questions involved, without first fully comprehending the issues as made by the pleadings. The petition contains two counts, and is as follows:

### "First Count.

"Plaintiff states that it is a corporation duly formed and existing under the laws of the State of Missouri, and engaged in the business of supplying water for certain agreed prices to the said city of Joplin and the inhabitants thereof. That said city of Joplin is a city of the third class, under and by virtue of the laws of the State of Missouri, situated in said county and State.

"That on or about the 21st day of December, 1881, the said city of Joplin, then existing and acting under a special charter, duly granted by the Legislature of the State of Missouri, did by an ordinance known as

No. 79, entitled Ordinance No. 79, to provide for supplying with water the streets, lanes, alleys, squares and public places in the city of Joplin, Missouri, and for contracting with Paul B. Perkins, of Geneseo, Illinois, his heirs, associates and assigns for the supplying with water such streets, lanes, alleys, squares and public places, duly passed, adopted and approved, and duly authorized and ratified by a vote of the qualified voters of said city, at an election duly held, make a contract with one Paul B. Perkins, for the supplying with water the streets, lanes, alleys, squares and public places in said city upon the terms and conditions contained and expressed in the various sections of said ordinance, and for that purpose, in said ordinance, made a contract with said Perkins, and his assigns, to construct and complete a system of waterworks in and adjacent to said city; the provisions and conditions of said ordinance were duly accepted by said Perkins, and in accordance with, by and under the terms of said ordinance, said Perkins and assigns did construct, maintain and operate said system of waterworks, and have the same completed on or about the first day of April, 1882.

"That said city under, in and by section eight of said ordinance, did rent from said Perkins and his assigns, during the full term of twenty years after the completion of said waterworks, sixty hydrants, located in said city, by the council of said city, at an annual rental of five thousand dollars per annum, payable semiannually, on the 15th days of January and July in each year, with interest at eight per cent per annum on each and every deferred payment, if any there should be, until paid, as was provided in section thirteen of said ordinance, for the full term of twenty years from and after said waterworks should be completed and the water ready to be delivered from said hydrants, and the mayor and city clerk of said city notified thereof in writing by the owners or operators of said works,

or their agents, all of which was duly done, performed and completed about the said first day of April, 1882. That said sixty hydrants were duly located as aforesaid, constructed and put in by said Perkins and water supplied and furnished to and through said hydrants by said Perkins, his assigns and successors from the day and year last aforesaid continuously up to the present time, all in accordance with the terms of said ordinance.

"That on or about the 13th day of April, 1881, the said Perkins assigned the aforesaid contract to the Joplin Water Company, a corporation duly formed and existing under the laws of the State of Missouri, and on or about the 1st day of May, 1893, said Joplin Water Company assigned said contract to the plaintiff herein, who ever since has been and now is the owner thereof and entitled to all the rights and benefits due for the performance thereof and coming from said city, and has been so entitled ever since the day and year last aforesaid.

"That said city, under and by the said contract and the premises herein as stated, became liable to pay and agreed to pay said Perkins, his assigns and successors, as a rental for the said sixty hydrants, five thousand dollars per annum, payable as aforesaid; that said city did pay and continue in accordance with said ordinance to pay to said Joplin Water Company, and to the plaintiff, respectively, the said rental as in said ordinance stipulated and expressed to be paid, from about the 15th day of April, 1882, aforesaid, up to the 15th day of July, 1896, when at said last day and year mentioned the said city made default therein and then failed and refused to pay the plaintiff anything further on account of the rental of said hydrants and has ever since and still so defaults, fails and refuses.

"Wherefore, in consideration of the premises, the plaintiff states and alleges that the defendants owe to the plaintiff on account of said hydrant rental the sum of twenty-five hundred dollars, being the rental owing

as aforesaid for said sixty hydrants from July 15, 1896, to January 15, 1897, with interest thereon at eight per cent per annum from the day and year last aforesaid to the commencement of this suit, that is, for one year and four months, amounting to two hundred and sixty-six dollars and sixty-six cents, and wherefore, in consideration of the premises the plaintiff prays judgment against the defendant for the sum of twenty-seven hundred and sixty-six dollars and sixty-six cents, with all further interest to become due, and costs. of suit.

"Wherefore, and in consideration of the premises the plaintiff states and alleges that the defendant owes to the plaintiff on account of said hydrant rental the further sum of twenty-five hundred dollars, being the rental owing as aforesaid for said sixty hydrants from January 15, 1897, to July 15, 1897, with interest thereon at eight per cent per annum from the day and year last aforesaid to the commencement of this suit, that is for ten months, amounting to one hundred and sixty-six dollars, and wherefore, in consideration of the premises the plaintiff prays judgment against the defendant for the further sum of twenty-six hundred and sixty-six dollars, with all further interest to become due and costs of suit.

"Wherefore, in consideration of the premises, the plaintiff states and alleges that the defendant owes to the plaintiff on account of said hydrant rental the further sum of twenty-five hundred dollars, being the rental for said sixty hydrants from July 15, 1897, to January 15, 1898, with interest thereon at the rate of eight per cent per annum from the day and year last aforesaid to the commencement of this suit, that is, six months, amounting to one hundred dollars, and wherefore, in consideration of the premises, the plaintiff prays judgment against the defendant for the further sum of twenty-six hundred dollars, with all further interest to become due and costs of suit.

"Second Count.

"The plaintiff further states that in and by the said ordinance and the acceptance thereof as aforesaid it was agreed, as is specifically set forth and expressed in section ten of said ordinance, that hydrants additional to the said sixty should be erected by said Perkins, his assigns and successors, in said city, when thereto ordered by a resolution of the council of said city to that effect, the cost of such additional hydrants with the main necessary therefor and the putting of the same in should be paid by the city; the entire cost of each of such additional hydrants not to exceed eighty-five dollars, each of such hydrants to be of the same style and make of the hydrants mentioned in the first count of this petition, and when furnished, erected and completed, the said Perkins, his assigns, and successors, are to keep the same in repair and supplied with water as in the case of the hydrants mentioned in the first count of this petition. That said city, in said ordinance, agreed to pay a rental of twenty-five dollars per annum for every such additional hydrant so erected and supplied, such rental to begin and be payable from the time when any such additional hydrant or hydrants should be ready to supply water and the city clerk of said city notified thereof.

"That accordingly and in accordance with said ordinance and the contract aforesaid, and the provisions thereof, the said Joplin Water Company, and the plaintiff, respectively, from time to time put in, supplied with water and kept in repair ninety-three hydrants additional to those mentioned in the first count of the petition, all of which were duly accepted by and devoted to the uses of said city.

"That the plaintiff and its predecessor, said Joplin Water Company, upon one part, and the defendant, upon the other part, each and all duly performed the contract aforesaid as required by and expressed in

said ordinance, and the subsequent matters pertinent thereto and connected therewith, and the said city made all payments due thereon and thereunder up to the 15th of July, 1896, when the said city made default in the payment of the hydrant rental due the plaintiff upon said ninety-three additional hydrants, and then and thereafter failed and refused to pay the plaintiff any part of such rental, and has ever since so defaulted, failed and refused to pay, and still so continues to default, fail and refuse.

"Wherefore, in consideration of the premises, the plaintiff states and alleges that the defendant owes to the plaintiff on account of the rental of said additional ninety-three hydrants, the further sum of eleven hundred and sixty-two dollars and fifty cents, being the rental for said ninety-three additional hydrants from July 15, 1896, to January 15, 1897, with interest thereon at the rate of eight per cent per annum from the day and year last aforesaid to the filing of this petition, that is, for one year and four months, amounting to one hundred and thirty-nine dollars; and wherefore, in consideration of the premises, the plaintiff prays judgment against the defendant for the further sum of thirteen hundred and one dollars and ten cents, with all further interest to become due, and costs of suit.

"Wherefore, in consideration of the premises, the plaintiff states and alleges that the defendant owes the plaintiff, on account of said additional ninety-three hydrants, the further sum of eleven hundred and sixty-two dollars and fifty cents being the rental for said ninety-three hydrants from January 15, 1897, to July 15, 1897, with interest thereon at the rate of eight per cent per annum from the day and year last aforesaid to the filing of this petition, being ten months, amounting to one hundred and sixteen dollars, and wherefore, in consideration of the premises, the plaintiff prays judgment against the defendant for the further sum of twelve hundred and seventy-eight dollars and fifty

cents, with all further interest to become due, and costs of suit.

"Wherefore, in consideration of the premises, the plaintiff states and alleges that the defendant owes to the plaintiff on account of the rental of said additional ninety-three hydrants, the further sum of eleven hundred and sixty-two dollars and fifty cents, being the rental for said ninety-three additional hydrants from July 15, 1897, to January 15, 1898, with interest thereon at the rate of eight per cent per annum from the day and year last aforesaid to the filing of this petition, being four months, amounting to thirty-one dollars; and wherefore, in consideration of the premises, the plaintiff prays judgment against the defendant for the further sum of eleven hundred and ninety-three dollars and fifty cents, with all further interest to become due, and costs of suit."

To this petition defendant filed its answer as follows:

"Now comes the defendant and for amended answer to the petition of plaintiff herein, denies each and every allegation therein contained, in each and all of the several counts thereof.

"Further answering, defendant avers that at the time of the pretended passage of the ordinance mentioned in plaintiff's petition, known as 'Ordinance No. 79,' the defendant was a municipal corporation, organized and incorporated under an act of the General Assembly of the State of Missouri, entitled, 'an act to incorporate the city of Joplin, in Jasper county, Missouri, and providing for the government of the same,' approved March 24, 1873, and the defendant says that the defendant did not have the power and authority, by virtue of its said special charter, to make, enter into and execute the contract mentioned in said ordinance, and did not have the power and authority to pass and enact the said ordinance; and defendant says the said

ordinance is wholly beyond the power of the defendant, and for that reason is void.

"And the defendant further denies that the said ordinance was duly passed and adopted and approved, and duly authorized and ratified by a vote of the qualified voters of said city at an election duly held; but, on the contrary, the defendant avers that said ordinance was not duly passed, adopted and approved, and that the same was not duly authorized and ratified by the qualified voters of said city at an election duly and legally held; but, if any election was held, defendant says that the same was unauthorized, and a majority of the qualified voters of defendant's city voting at said pretended election did not vote in favor of ratifying and approving the said ordinance.

"Further answering, the defendant denies that the plaintiff furnished water through its hydrants to the defendant, as provided in the said ordinance and contract, in accordance with the terms thereof, but the defendant says that the plaintiff failed, refused and defaulted in furnishing the quantity and supply of water required by the provisions and terms of said ordinance, and wholly failed to do and perform the matters and things alleged and pleaded by plaintiff, in the manner and form alleged by plaintiff in its petition.

"Further answering, the defendant avers, that by the terms of ordinance No. 79, mentioned in plaintiff's petition, Paul B. Perkins agreed, on behalf of himself, his associates and assigns, to constantly furnish, maintain and supply the defendant with water, for the purpose of extinguishing fires, in such quantities and of such pressure that the said waterworks would at all times, under fire pressure, discharge six one-inch fire streams one hundred feet in height, through fifty feet of two and one-half inch hose, simultaneously, from any six hydrants situated on Main street, and to discharge, under fire pressure, four one-inch fire streams ninety feet in height, through fifty feet of two and one-half

inch hose, simultaneously, from any four hydrants in the city, and further agreed to constantly and uninterruptedly furnish and maintain a good, sufficient and adequate supply of water for domestic, manufacturing and industrial uses for defendant's citizens, all of which said agreements plaintiff assumed and by said franchise or contract was bound, and the defendant avers that during the time for which hydrant rentals are sued for herein plaintiff failed, neglected and refused to furnish an adequate supply of water and fire pressure according to the terms of said ordinance and contract, and the plaintiff permitted its waterworks plant and machinery to become defective and insufficient, and placed the same in charge of careless, inexperienced and unskilled employees, who carelessly and unskillfully managed and conducted the same; that at the time of the erection and construction of said waterworks plant the defendant city had a population of not exceeding 5,000, and said population from and after that time increased to such an extent that during the time hydrant rentals are sued for herein, the population of defendant city was 15,000, and there was a like increased demand among the defendant's citizens for water for domestic, manufacturing and industrial uses and for fire pressure for the extinguishment of fires; and plaintiff failed and neglected to increase the capacity of said waterworks so as to meet the need of the constantly growing and increased population in defendant city, and of the increased demand among defendant's citizens for water for domestic, manufacturing and industrial uses, and for fire pressure for the extinguishment of fires in defendant city, and plaintiff, during all that time, failed and neglected to furnish a sufficient and adequate supply of water to extinguish fires in defendant's limits, and failed, neglected and refused to furnish an adequate supply of water for domestic, manufacturing and industrial purposes to defendant's citizens. That in order to afford sufficient

water and fire pressure to extinguish such fires, it was necessary for plaintiff to construct its waterworks and to so operate and maintain the same that plaintiff's said waterworks would furnish sufficient fire pressure to discharge six one-inch fire streams one hundred feet in height, through fifty feet of two and one-half inch hose, simultaneously, from any six hydrants situated on Main street, said Main street being the principal business street in defendant's city, and to discharge four one-inch fire streams ninety feet in height, through fifty feet of two and one-half inch hose, simultaneously, from any four hydrants in defendant city; and the defendant avers, that the water supply and fire pressure furnished by plaintiff was so inadequate and insufficient that it would not discharge, under fire pressure, six fire streams, simultaneously, from six hydrants on Main street, through fifty feet of two and one-half inch hose, simultaneously, four one-inch fire streams to exceed twelve feet in height. And the defendant further avers, that by reason of the failure and neglect of plaintiff to furnish said water and fire pressure as provided by the terms of said ordinance and contract defendant was unable to extinguish fires in defendant city during the whole time for which hydrant rentals are sued for herein; and during such time a large number of disastrous and destructive fires occurred in defendant city, at which, owing to such lack of fire pressure, defendant's fire department was wholly unable to extinguish the same, and in consequence thereof a large amount of property of defendant's citizens and taxpayers was consumed and destroyed by fire; and defendant further avers, that the said water and fire pressure, so supplied by defendant, was not worth to exceed eight hundred dollars per year for the first sixty hydrants mentioned in plaintiff's petition; and was not worth to exceed five dollars per year for each of the other ninety-three hydrants mentioned in plaintiff's petition; that the water supply and

fire pressure agreed to be furnished by plaintiff and its predecessors, under said ordinance and contract, would have been worth, if the same had been furnished to defendant for the uses aforesaid, five thousand dollars per year for the first sixty hydrants, and twenty-five dollars per year for each of the additional ninety-three hydrants, and in consequence of plaintiff's failure and neglect to furnish the water supply and fire pressure aforesaid, the defendant has been damaged in the sum of fifty-eight hundred and sixty dollars per year, during the time for which hydrant rentals are sued for herein, aggregating the sum of eight thousand seven hundred and ninety dollars, for the period for which hydrant rentals are sued for herein, which amount defendant asks to be recouped and set off against plaintiff's claim, if any valid claim is found to exist in favor of plaintiff against the defendant for hydrant rentals sued for herein, and that plaintiff's claim be reduced by such amount of damage; and if plaintiff be entitled to nothing that defendant have judgment for said sum; that plaintiff's petition be dismissed and defendant go hence with its costs.''

To which answer plaintiff replied as follows:

''Now comes the plaintiff and for replication to the amended answer of the defendant herein, denies each and every allegation therein contained which is not hereinafter admitted.

''Plaintiff further replying avers and alleges that there was full power and authority to pass Ordinance No. 79, the same mentioned and referred to in the petition and said answer. And plaintiff avers that the same was duly passed, adopted and approved, and duly ratified by the qualified voters of said city of Joplin, all as required by law, and that said ordinance was and is valid.

''Plaintiff further replying, avers, alleges and states that it, the plaintiff, and its predecessors, have fully complied with and performed each and all of the

conditions required in and by said ordinance and duly performed all the conditions of the contract contained in said ordinance.

"Plaintiff says it is not true that it did not and has not increased the capacity and efficiency of said works, as required by the growth of the said city of Joplin, but on the contrary, that plaintiff has from time to time enlarged, increased and extended the said works and the efficiency thereof, at an expenditure of a very large sum of money, in the aggregate about two hundred thousand dollars.

"And plaintiff further replying, avers, states and alleges that the contract mentioned and set forth in and by said ordinance was duly and mutually accepted and agreed to by the plaintiff and its predecessors upon one part, and the said city of Joplin upon the other, and on or about the — day of December, 1881, and then came into full force and has remained in full force ever since and still is, and from that date to the present time the said city of Joplin has accepted and received and used and had the benefit of water supplied by the plaintiff and its predecessors for all the purposes named in and required by said ordinance and the terms thereof, and that as to each and all of the things mentioned and complained of in the defendant's answer, there has been a full, entire and complete waiver of all objection by the defendant, and that the defendant is now estopped from making any complaint against the plaintiff or refusing to pay plaintiff's claim and demand, as set forth in the petition because, first, of performance in full by the plaintiff of said contract and ordinance, and, secondly, because each and all grounds of objection, if any there existed, which plaintiff denies, have been waived by the defendant.

"Wherefore, in consideration of the premises, plaintiff prays judgment as asked for in its petition."

Ordinance No. 79, introduced in evidence, fur-

nishes the contract upon which this suit is predicated. We will not burden this opinion with a complete copy of the ordinance, but will be content with inserting herein such sections as indicate clearly the general purport of the obligation resting upon the parties, by virtue of the terms of the contract.

"Be it ordained by the council of the city of Joplin, Missouri, as follows:

"Section 1. The city of Joplin, Missouri, hereby contracts with Paul B. Perkins, of Geneseo, Illinois, his heirs, associates and assigns for the supplying with water the streets, lanes, alleys, squares and public places in said city, upon the terms and conditions contained in the following sections of this ordinance:

"Sec. 2. This contract shall remain and be in full force for the term of twenty years from and after the date of the passage of this ordinance.

"During said full term of twenty years (except sooner purchased by the city as herein provided), the said Paul B. Perkins, his heirs, associates and assigns, shall have the exclusive right to maintain and operate waterworks for supplying said streets, lanes, alleys, squares and public places with water and for the extinguishment of fires in said city, and for domestic, manufacturing or industrial uses in said city. : . .

"Sec. 6. The fire hydrants shall be double-tipped for two and one-half inch fire hose coupling, and shall be located at such points on the mains as may be designated by the council as herein provided for.

"Sec. 7. Said waterworks shall have the capacity to discharge under fire pressure six one-inch fire streams one hundred feet in height through fifty feet of two and one-half inch hose, simultaneously, from any six hydrants situated on Main street, or four one-inch fire streams ninety feet in height through fifty feet of two and one-half inch hose, simultaneously, from any four hydrants in the city.

"Said works shall maintain an average pressure

·of not less than sixty pounds to the square inch universally through the pipe distribution while discharging the fire streams as above.

"The pressure for domestic supply shall be that furnished by the altitude of the reservoir, and shall have a capacity for supplying a population of 25,000 with sixty gallons per capita per day, or about 1,500,000 gallons. . . .

"Sec. 8.   That said city of Joplin hereby agrees to and does rent from said Perkins, his heirs, associates and assigns during the full term of twenty years from .and after the completion of said waterworks, sixty fire hydrants located as aforesaid, at an annual rental of five thousand dollars per annum, payable semiannually, ·on the 15th days of January and July in each year for said full term of twenty years, from and after said waterworks are completed and the water ready to be delivered from said hydrants, and the mayor and city clerk notified thereof in writing by the owners or operators of said works, or their agent.

"Said hydrants are to be used only for extinguishing fires and for flushing gutters and sewers, and shall be placed and kept under the control of the fire department of said city, or the mayor or other officers designated by the council for that purpose, and no other person shall open or close the hydrants. . . .

"Sec. 10. . . . Additional hydrants . . . shall . . . be erected when ordered by a resolution of.the council to that effect.   The cost of said hydrant, together with the pipe. connecting it with the main and of putting in, shall be paid by the city.   (The entire cost thereof, however, not to exceed eighty-five dollars.) Said hydrant shall be of the same style and make of the original sixty, and when so furnished and erected complete, the said Perkins, his heirs, associates and assigns, shall keep the same in repair and supplied with water as in the case of the original sixty.

"Said city hereby agrees to pay a rental of twenty-five dollars per annum for every such hydrant so erected and supplied additional to the original sixty hydrants herein provided for, the rental to begin when the hydrant is ready to supply water and the city clerk is notified thereof.

"Sec. 11. When the said waterworks are completed and the city clerk notified thereof, a test thereof shall be made for an assurance of the capacity as herein set forth.

"Then, for the full term of twenty years thereafter (except sooner purchased by the said city as herein otherwise provided), the said Perkins, his heirs, associates and assigns shall continue and furnish, without default, a constant and uninterrupted supply of water to said city for the various uses as hereinbefore set forth.

"Provided, that if at any time after the completion of said works and after the supply of water has begun, the supply of water shall cease or make default from any cause of neglect on the part of said Perkins, his heirs, associates or assigns, for five days at any one time, then the said city shall take possession temporarily of said works, machinery and appliances, and operate the same until insured by sureties, or otherwise, that the said works will be efficiently operated, and the expense incurred by said city in operating the same shall be a lien upon the earnings of said works until paid."

This ordinance, expressing the terms of the contract between P. B. Perkins and the city of Joplin, was duly adopted at a special election held for that purpose, and this contract was accepted by Perkins. As shown by the report of the committee, the waterworks were inspected, and the following report made to the city council:

"Joplin, Missouri, October 19, 1881.
"To the Honorable City Council of the City of Joplin,
    Missouri:

"We, the undersigned, having been appointed by
your honorable body as a committee for that purpose,
do hereby respectfully report that we have inspected
and examined the waterworks of the Joplin Water
Company and have made the test thereof provided in
ordinance No. 79 of the ordinances of said city.

"We further report as a result of said inspection,
examination and test that the said waterworks are com-
plete and are of the capacity in all respects as provided
and required in and by said ordinance.

                    "Respectfully submitted,
                            "E. R. MOFFETT,
                            "N. M. BARNER,
                            "L. RISELING."

Notice of the completion of the waterworks and the
readiness to deliver water, in pursuance of the contract,
was duly served.

The contract upon which this suit is based was
fully consummated by ordinance No. 93, as follows:

                "Ordinance No. 93.

"To declare the completion of the waterworks men-
        tioned in ordinance No. 79 of the ordinances of this
        city and to fix the time of the commencement of the
        rental for fire hydrants due the Joplin Water Com-
        pany.

"Be it ordained by the council of the city of Joplin,
Missouri, as follows:

"Section 1.   It appearing to the satisfaction of the
council that the waterworks mentioned in ordinance No.
79 of the ordinances of this city, entitled 'Ordinance No.
79, to provide for supplying with water the streets,
lanes, alleys, squares, and public places in the city of

Joplin, Missouri, and for the contracting with Paul B. Perkins, of Geneseo, Illinois, his heirs, associates and assigns, for the purpose of supplying with water such streets, lanes, alleys, squares and public places,' approved December 21, 1889, have been duly examined and inspected and a test thereof made as provided in and by said ordinance.

"And that said waterworks are duly completed and are of the capacity in all respects as provided and required in and by said ordinance.

"And that said Paul B. Perkins has duly assigned and conveyed unto the Joplin Water Company, a corporation duly incorporated under and by virtue of the laws of this State, all his right, title and interest of, in and to the contract made and entered into by this city with him and his assigns by said ordinance, and all right, title and interest of, in and to all rights, privileges and franchises therein granted.

"It is hereby declared that the said Joplin Water Company, assignee of said Paul B. Perkins, as aforesaid, has established, constructed and completed and is now maintaining and operating the waterworks mentioned and described in said ordinance in all respects as therein required.

"Section 2. And whereas the said Joplin Water Company has duly erected sixty fire hydrants, and water is ready to be delivered therefrom as provided in said ordinance.

"It is hereby ordained that the first day of November, A. D. 1881, be and the same is hereby fixed as the time from which shall commence the rental from this city to said Joplin Water Company as provided in said ordinance, the same being the annual sum of five thousand dollars, to continue so long as the terms of said ordinance are complied with.

"Section 3. This ordinance shall take effect and remain in force from and after its publication.

"Approved this 20th day of October, A. D. 1881.
"GALEN SPENCER, Mayor.
"Attest:   J. P. NEWELL, City Clerk."

This contract was assigned to the Joplin Water
Company, a corporation, and it is conceded that this
company duly assigned the same to the present plaintiff.

OPINION.

The evidence in this cause tends to show that the
works and everything in and about them, were located,
constructed, completed and put in operation, and tested,
reported upon favorably, and a time fixed for the
hydrant rental to begin, and water was supplied appel-
lant, and such rental was paid continuously and regu-
larly from the first day of November, 1881, to July 15,
1896, fourteen years, eight months and fourteen days,
according to contract.

From and after July 15, 1896, the city continued
to receive and use the water just as had been done
before, for extinguishing fires and for flushing gutters
and sewers.

In this case, as in many others, the testimony upon
the question as to whether the fire pressure continued
to be or was maintained at the required standard as
fixed by the ordinance which constituted the contract,
was conflicting.   There was also a conflict in the testi-
mony as to a substantial compliance with the contract,
in a number of details, as provided by the contract.
We have carefully read the testimony as disclosed by
the record, and shall not encumber this opinion with a
detailed statement of it.   We find testimony on both
sides in this controversy, and there was sufficient testi-
mony to authorize the court to submit this cause to the
jury.   We shall direct our attention to the disposition
of the legal questions involved in this proceeding, and
refer further to the testimony in this cause, in the
course of the opinion.

This cause was submitted to a jury upon the instructions of the court, and they returned a verdict for the plaintiff, and the court rendered judgment in accordance with the verdict. We will refer to the instructions given and refused, in the body of the opinion.

It is earnestly insisted by appellant that ordinance No. 79, which furnishes the contract upon which this suit is based, was not introduced. We simply inquire, if this is true, why do we find this ordinance in the abstract of record? If it was not introduced, then it has no place in the record, which is here presented by appellant. The record, disclosing a complete copy of this ordinance, answers fully this contention, and we must dispose of the record as we find it.

The legal propositions involved in this controversy can be briefly stated.

This cause was tried by the court upon the theory that, if there was a compliance with the contract as expressed in the ordinance, the recovery should be for the amount of the contract price, unless the jury should find that there was some substantial difference between the value of the supply of water and fire pressure furnished by the plaintiff, and that agreed to be furnished by the provisions of ordinance No. 79. In that case the jury were authorized in reaching a verdict, to recoup such damages as resulted from such substantial difference between the water and fire pressure supplied, and that agreed to be supplied.

This proposition is also presented, that even though respondent did not in every particular, furnish water in quantities and fire pressure of the force provided for by ordinance No. 79, yet if there was no substantial difference between that furnished and that agreed to be furnished, only nominal damages should be deducted from the contract price, as fixed by the terms of the ordinance.

Appellant presents two theories of its defense in this case, as indicated by the declaration of law re-

quested at the close of the evidence. First, that, notwithstanding water and fire pressure was furnished, and that appellant accepted it and made such use of it as it was susceptible of, yet if respondent failed to supply the water and pressure, as expressed in the ordinance, then and in that case, respondent was not entitled to recover any amount whatever. Second, that, the appellant having accepted and used the water supply and fire pressure furnished, yet it not having been supplied as provided by the contract, the respondent should have instituted this suit upon the *"quantum meruit,"* and recovered the reasonable value of the water in fact furnished.

The foregoing substantially states the vital question involved in this dispute, which is fully verified by the instructions requested, except, however, it will be observed that the appellant finally adopted the theory of the court that, having accepted and used the water supplied, appellant was entitled to recoup such amount from the contract price, as damages resulting from the failure to supply the water and fire pressure in accordance with the contract, by requesting a declaration substantially embodying that theory, which request was granted by the court and the instruction given.

To fully appreciate the views of the trial court in the disposition of this case, it would be well to look to its application of the law to the facts in this case, as indicated by the instructions given and refused. They are as follows:

"The court, at the request of the plaintiff, gave the following instructions, to each and every one of which the defendant at the time objected and excepted and still excepts:

"If the jury find for the plaintiff they will assess the damages and amount due the plaintiff from the defendant on each count separately as contained in the plaintiff's petition.

"The court instructs the jury that they are not to take into account in estimating damages to be recouped against the plaintiff in this case, any losses incurred by citizens of destruction of their property by fire, nor any losses by reason of private citizens now having, at all times, a supply of water for domestic uses as provided for.

"The court submits to the jury a form of verdict which the jury may use, also a calculation of the amount of interest on the amounts sued for in the first and second counts of the petition, but the court instructs you that it is your duty to calculate the amount of interest for yourselves, and you must not accept the statement furnished as being correctly calculated, but must calculate the interest correctly yourselves."

The court, at the request of the defendant, gave the following instruction:

"The court instructs the jury that by terms of ordinance No. 79 read in evidence and the assignment thereof to plaintiff, the plaintiff agreed to furnish and it became the duty of the plaintiff to constantly furnish, maintain and supply the defendant with water for the purpose of extinguishing fires and flushing gutters and sewers in such quantities and of such pressure that the said waterworks would at all times when under fire pressure, discharge six one-inch fire streams one hundred feet in height, through fifty feet of two and one-half inch hose simultaneously from any six hydrants situated on Main street in the city of Joplin, and to discharge under fire pressure four one-inch fire streams, ninety feet in height, through fifty feet of two and one-half inch hose simultaneously from any four hydrants in the city, for which the plaintiff should be entitled to receive from the defendant, as an annual compensation, payable semiannually, the sum of five thousand dollars for the first sixty fire hydrants so furnished, and the further sum of twenty-five dollars

for each and every additional hydrant furnished and so supplied with said water.

"And if you find from the evidence that the plaintiff, from and after the 15th day of July, 1896, to the 15th of January, 1898, did not constantly furnish, maintain and supply the defendant with water for the purpose aforesaid in such quantities and of the pressure aforesaid, but did furnish water in less quantities and of less pressure than required by the terms of said ordinance as aforesaid and that such water was used by the city for the purpose of extinguishing fires and flushing gutters and sewers, then you should deduct from the plaintiff's claim the amount of damages, if any, sustained by the defendant by reason of the failure of the plaintiff to furnish said water for said purposes in the quantity and of the pressure required by said ordinance as aforesaid. The measure of defendant's damages is the difference, if any, between the value of the supply of water and the fire pressure actually furnished by the plaintiff and used by the defendant and the value of the supply of water and fire pressure which the plaintiff agreed to furnish by the said contract and ordinance as aforesaid estimated with reference to the uses for which said water and fire pressure was furnished."

The court of its own motion, after the commencement of the argument, gave the following instruction:

"The court instructs the jury that, even though you may believe and find from the evidence that the plaintiff did not furnish water in quantities and fire pressure of the force provided for by ordinance No. 79, yet unless you believe from the evidence that there was some substantial difference between the value of the supply of water and the fire pressure furnished by the plaintiff and that agreed to be furnished by the provisions of said ordinance, estimated with reference to the uses for which water and fire pressure were furnished, then you should only allow nominal damages

to the defendant, to be recouped and deducted from the contract price agreed to be paid for the use of the hydrants as stated in the petition and shown by the evidence."

The defendant requested the court to give the following instructions, which request was refused:

"The court instructs the jury that unless plaintiff, between July 15, 1896, and January 15, 1898, furnished to defendant the quantity of water and fire pressure contracted to be furnished in the ordinance read in evidence for extinguishing fires and flushing gutters and sewers, it can recover from defendants only the value of the water and fire pressure furnished the defendant and used by the defendant.

"The court instructs the jury that under the pleadings and evidence the plaintiff can not recover and your verdict must be for the defendant.

"The court instructs the jury that if they find from the evidence that from the 15th of July, 1896, to the 15th of January, 1898, the plaintiff failed to furnish and supply defendant with water through its water mains in the city of Joplin, of such quantities and of such pressure as would discharge, under fire pressure, six one-inch fire streams one hundred feet in height through fifty feet of two and one-half inch hose simultaneously from any six hydrants situated on Main street, or as would discharge under fire pressure four one-inch fire streams ninety feet in height, simultaneously through fifty feet of two and one-half inch hose from any four hydrants in the city, your verdict should be for the defendant."

We have reached the conclusion that the court properly declared the law as applicable to the facts disclosed in this case.

It is insisted by appellant that the court erred in refusing the instructions requested. We have examined the testimony as contained in the record and find it amply sufficient to submit the issues made by the

pleadings to the jury, hence, the court properly refused the peremptory instructions asked by the appellant. The instructions requested by defendant and refused by the court substantially directed the jury that plaintiff was only entitled to recover the value of the water and fire pressure furnished by the plaintiff and used by the defendant.

This instruction was properly refused for the reason it presented an issue not made by the pleadings.

This is an action upon the contract, the terms of which are fully expressed in the ordinance. It is not an abandonment of the contract and a suit to recover on the *quantum meruit.*

The defendant insists, by this instruction, that unless there was a strict performance of the contract, plaintiff is not entitled to recover upon the contract, and if defendant accepted and used the insufficient supply of water, the recovery must be had for its reasonable value. On the other hand, plaintiff insists that it substantially complied with the terms of the contract and further contends that, even though there was not a strict compliance with the terms of the ordinance, yet defendant continuously receiving such supply of water and fire pressure, for the years of rental for which this suit is brought, can not insist that this action can not be maintained on the contract. The court adopted the theory, as suggested by the plaintiff, and we think correctly, and submitted by an appropriate instruction requested by defendant, that the jury were authorized to recoup any damages sustained by the defendant by reason of the failure of plaintiff to strictly comply with the terms of the contract. The court very properly confined the instructions to the issues made by the pleadings. This action is based upon the contract. The defense is a failure to comply with the terms of the contract and, in addition, specially sets forth the facts constituting the failure, and asks that the dam-

ages resulting from such failure be recouped and set off against the claim of plaintiff.

We take it that there is no dispute that appellant accepted and used the supply of water and fire pressure furnished by respondent. This is indicated by the testimony and is emphasized by the instruction requested by the defendant, which recites the reception and use of the insufficient supply of water and pressure.

Contracts are usually-made in good faith, with certain duties imposed upon the parties, with the expectation that those duties will be performed. In view of the terms of the contract expressed in the ordinance, we are constrained to the opinion that appellant, upon the facts of this case, is not in a position to insist that this suit can not be maintained. This conclusion finds support in the very clear announcement of the rule in a similar case in the Supreme Court of Minnesota. It was said by the court, in Sykes v. City of St. Cloud, 62 N. W. l. c. 617, speaking of the city receiving and using an insufficient supply of water:

"It did not challenge the honesty of the company's efforts, nor impute to it any fraudulent design, but made useful to itself and enjoyed, so far as possible, the services of the company. This was not done for a day or temporarily, but for the full year, for which it says it should not pay anything. If there was a daily default or breach of the contract by the company, there was also a daily acceptance by the city of the benefits of the service rendered by the company. If it wanted the contract terminated, it should have said so, and have done so. Of course, if the company had not furnished any water, it could not have collected any rental. It was its duty under the contract to furnish this water, and this was a continuing duty on its part; and, in the absence of any acts of waiver or enjoying and participating in the benefits of the service performed, it would be a condition precedent to enable the company to recover for rental of the hydrants."

Appellant, under the law, should not be permitted to accept the benefits of the water supply by respondent, even though it was insufficient, and then urge a failure to comply with the contract, as a ground to defeat a recovery. It must act in good faith in respect to the contract and should have adopted such course as would avoid the evils complained of. The way was open; if respondent made default in furnishing the water and fire pressure as fixed by the contract, it could terminate the contract and refuse to further receive or use the water supply, or it could have availed itself of the express provision of the contract, as contained in section 11 of ordinance No. 79, and taken possession of the waterworks plant, and remedied the defects in the appliances, at the expense of said company. While complaints were made as to the insufficiency of the water and fire pressure, yet appellant continued to accept the benefits of such supply as was furnished, and this must be regarded as an important step in the direction of a waiver, and when this conduct is emphasized by a failure of the appellant to enforce an express provision of the contract, which was intended to meet specially the default complained of, it should be treated as a complete waiver of the right of appellant to insist that the contract was abandoned and that plaintiff is only entitled to recover on *quantum meruit*.

In the case of Water & Electric Light Co. v. City of Lamar, 140 Mo. l. c. 157, this court, speaking through BARCLAY, J., very clearly announced the rule as to the application of the doctrine of waiver. He said, in treating of the subject of waiver:

"It is one of the established principles of the law of sales, a principle founded on the plainest dictates of justice, that where an article is furnished, pursuant to a contract requiring it to be of a certain quality, the buyer must, at least, object to its quality within a reasonable time after its receipt, else the law will treat the

receipt as a final acceptance, and preclude any later objection on the ground of inferior quality. [Benjamin, Sales, sec. 703; Graff v. Foster (1878), 67 Mo. 520; Water Co. v. Aurora (1895), 129 Mo. 540, 31 S. W. 946.]''

While it may be said in the case before us that objections or complaints were made as to the insufficiency of the supply of the water and fire pressure, yet, notwithstanding such complaints, the benefits of such insufficient supply was received and used, and no steps taken to terminate the contract or to take possession of the plant, as was authorized by the contract. The theory upon which this case was tried in the circuit court, is fully approved in the cases of Wiley v. Inhabitants of Athol, 150 Mass. 426; and Sykes v. City of St. Cloud, supra.

The court in the last case cited, in approving the Massachusetts case, said:

''We think, however, that the rule laid down in Wiley v. Inhabitants of Athol, 150 Mass. 426, 23 N. E. 311, is a fair and equitable one, viz.: 'But although conditions precedent must be performed, and a partial performance is not sufficient, but when a contract has been performed in a substantial part, and the other party has voluntarily accepted and received the benefit of the part performance, knowing that the contract was not being fully performed, the latter may thereby be precluded from relying upon the performance of the residue as a condition precedent to his liability to pay for what he has received, and may be compelled to rely upon his claim for damages in respect of the defective performance.' ''

It will be observed that in the discussion of the case last cited, the court fully answers the contention of appellant in this case, in respect to pleading. It says upon that subject:

''Upon the question of pleading, we are of the opinion that the plaintiff pursued the proper practice.

Upon his theory of the case, he could not properly have done otherwise. He contended that he had performed all of the conditions of the contract, and framed his complaint accordingly. Upon this theory he went to trial, and so tried the case. If he had conceded a substantial breach of the contract, or only a partial and not a substantial performance of it, then, perhaps, an action upon *quantum meruit* might have been brought, if he claimed that the defendant had by its acts waived a strict performance, and by its acts rendered itself liable upon an implied contract. In either form of the complaint, the defendant can not be injured, for whatever legal or equitable defense it has may be interposed to one form of pleading as well as the other. In this case it could have interposed in its answer a claim for the damages it suffered by way of recoupment by reason of the failure to furnish a full and adequate supply of water for protection against fires.''

It is next insisted by appellant that the court erred in the instruction submitting plaintiff's claim with a computation of the interest, as made by a witness, in the trial of the case.

Instructions are intended to aid the jury in reaching a correct verdict. They must be considered all together. In this case, the action was upon a contract for rentals of numerous hydrants and the amount of rentals was fixed by the contract. This instruction was but an indication to the jury as to the nature of the claim, the method of calculating the interest on the amount which was fixed by the contract. It is not disputed that the computation was upon a correct basis. When taken in connection with the other instructions in the case, which told the jury that if plaintiff, in pursuance of the contract, furnished water and fire pressure, their finding should be for the plaintiff in the sum as provided by the contract, less the amount of damages to be recouped by reason of the failure to fully

Vol 177 mo—34

supply the amount of water and fire pressure provided by the ordinance, we are unable to conceive how such an instruction could mislead the jury. Whatever amount plaintiff was entitled to recover, it had the right to have the computation made by the method suggested. The instruction for that is practically conceded to be correct. If plaintiff was entitled to recover, it was entitled to recover the amount of rental, with interest, as provided by the contract, and the submitting of a computation of the interest did defendant no injury. The issues, as presented by the pleadings, having been properly submitted (while we do not approve of the form of the instruction given), the error is a harmless one and this cause should not be reversed for that reason.

It is urged that the court erred in excluding from the consideration of the jury, testimony tending to show sufficient supply and pressure for certain individuals. This testimony had no place in the trial of the issues presented in this case, and the court correctly excluded the testimony and instructed the jury to exclude it from their consideration. For any failure in this respect, the citizen could maintain his action. [State ex rel. Lanyon v. Joplin Water Co., 52 Mo. App. 312.]

The defendant in this controversy was not entitled to have recouped damages resulting to the individual.

If the purpose of this action was to terminate the franchise of the plaintiff for the reasons that the plaintiff had not fully complied with the contract in the way of supplying the inhabitants of the city with proper facilities for being supplied with water, then we could readily see the competency, as well as the relevancy of this testimony; but that is not this case; the individual is not seeking a remedy for the violation of any rights.

The purpose of ordinance 79, so far as the inhabitants of the city were concerned, was to place them in a position to receive the supply of water and assume the payment for it, as fixed by the ordinance. This

accomplished, so far as the rights of the citizen are concerned, in respect to his supply of water, he must assert them.

The defendant city, in this case, after having received the benefits of the water supplied by plaintiff for the purpose of extinguishing fires and flushing gutters, should not be permitted to defeat a recovery in this cause, from the fact that some one or more citizens are willing to say that the facilities for supplying water to individuals are insufficient. The city is not liable for the damages resulting from plaintiff's failure in this respect, and the citizen has an ample remedy; hence, we repeat there was no error in the refusal of the court to permit the jury to hear and consider such testimony.

Complaint is also made by appellant that the court erred in permitting plaintiff to introduce a witness after the case had been closed. We will say, in respect to this contention, that the rule is well settled by this court, that the order of introducing testimony must necessarily be largely in the discretion of the trial court, and verdicts will not be disturbed on this ground, unless it is apparent that the discretion has been improperly exercised and injury has resulted to the complaining party. This rule was very clearly announced by MACFARLANE, J., in the case of Fullerton v. Fordyce, 144 Mo. l. c. 526. He said: "The circuit courts have a very broad discretion in regard to the order of admitting testimony, and their discretion will not be interfered with unless it clearly appears to have been abused."

It is also contended by appellant that the court erred in giving an additional instruction for plaintiff after the argument of counsel had commenced. There was no error in the action of the court in that respect. That additional instructions may be given in open court, even after the case has been fully argued, finds support in an unbroken line of expression by this court

on that subject.    [Willmott v. Railroad, 106 Mo. 536;
Buck v. Railroad, 108 Mo. 190-1; Glenn v. Hunt, 120
Mo. 342-3; Wilkinson v. St. L. Sec. Dock Co., 102
Mo. 130.]

Counsel for appellant also earnestly insist that cer-
tain remarks of the court, indicated by the record, in
the presence of the jury, operated injuriously to de-
fendant in the trial of the cause.    It will be observed
that this complaint was not called to the attention of
the trial court in the motion for new trial, hence is not
properly preserved for review in this court.

We have carefully given attention, by a close ex-
amination of the record, to the numerous other errors
assigned by appellant, and have reached the conclusion
that none of them are of sufficient merit to warrant the
reversal of this case.

This cause was tried by respondent on the theory
that there was a substantial compliance with the con-
tract, on the part of the appellant; that there was a
failure to comply with it, and that defendant was en-
titled to recoup such damages as resulted from the par-
tial failure to comply with the terms of the contract, as
expressed in the ordinance.    This is unmistakably in-
dicated by the instructions requested.

We have reached the conclusion that the trial court,
as disclosed by the record, heard all the testimony rele-
vant to the issues involved, and correctly declared the
law applicable to the facts developed, and finding no
reversible error in the record, the judgment should be
affirmed, and it is so ordered.

All concur, except *Burgess, J.*, absent.